## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| RAYMOND JOSEPH SCHNEIDER, ) | Case No. 23-10337 |
| ) | |
| Debtor. ) | Judge Beth A. Buchanan |
| ) | |
| ) | |

STATE OF OHIO        )
                      )   ss

COUNTY OF FRANKLIN   )

## DECLARATION IN SUPPORT OF THE MOTION BY HUNTINGTON NATIONAL BANK FOR A CHAPTER 11 TRUSTEE

I, **DAVID WECHTER**, being duly sworn, declares and says:

1.     I am a Senior Vice President of Plaintiff The Huntington National Bank ("**Huntington**"). I make this declaration under oath and subject to penalties for perjury. I also make this Declaration based on my personal knowledge and Huntington's books and records. I submit this Declaration in support of Huntington's Motion for the Appointment of a Chapter 11 Trustee ("**Motion**").

**State Court Collection Action**

2.     On June 5, 2020, Huntington commenced a collection action against the Debtor in the Ohio Court of Common Pleas in Franklin County ("**State Court**") under Index Number A2002093 ("**Collection Action**") for approximately $76 million based on a personal guaranty Debtor signed in connection with some commercial loans. A true and accurate copy of the Complaint (without exhibits) is attached as **Exhibit A**.

3.     On November 18, 2022, the State Court granted Huntington's motion for summary judgment in the Collection Action. A true and accurate copy of the State Court's Decision on Motion for summary Judgment is attached as **Exhibit B**.

4.     On December 13, 2022, the State Court issued a Judgment Entry Against Raymond Schneider in the amount of $75,599,410 as of July 28, 2020. (the "**Judgment**"). A true and accurate copy of the Judgment is attached as **Exhibit C**.

5.     On February 15, 2023, the State Court issued an Amended Judgment Against Raymond Schneider ("**Amended Judgment**"). A true and accurate copy of the Amended Judgment is attached as **Exhibit D**. The State Court amended the Judgment to make clear that the Judgment was a final appealable order. In all other substantive respects, the Judgment and Amended Judgment are identical.

6.     Prior to the entry of the Judgment, Huntington had completed some sales of collateral owned by entities other than the Debtor. After crediting the Debtor with these recoveries, the current balance due under the Judgment is approximately $27 million.

**Personal Financial Statements**

7.     Prior to the commencement of the Collection Action, the Debtor provided Huntington with a personal financial statement dated as of June 1, 2019 ("**2019 PFS**") in which the Debtor represented that he had a personal net worth of $77,954,300. A true and accurate copy of the 2019 PFS is attached as **Exhibit E**.

8.     After Huntington commenced its Collection Action, the Debtor provided Huntington with a personal financial statement dated as of September 1, 2021 ("**2021 PFS**") in which the Debtor represented that he had a personal net worth of $17,725,000. A copy of the 2021 PFS is attached as **Exhibit F**.

**Receivership Motion**

9.     After the Judgment was entered, on December 19, 2022, Huntington filed a motion for the appointment of a receiver in the State Court over all of the Debtor's assets to aid in Huntington's efforts to collect on the Judgment ("**Receivership Motion**"). A true and accurate copy of the Receivership Motion with memorandum of law (without exhibits) is attached as **Exhibit G**.

10.     In the Receivership Motion, Huntington argued that a receiver should be appointed based on the Debtor's fraudulent conveyance of tens of millions of dollars in assets. Although the Debtor opposed the Receivership Motion, the Debtor never denied in his opposition papers that the fraudulent transfers took place, nor did the Debtor submit a fact affidavit refuting the allegations. A true and accurate copy of the Debtor's opposition to the Receivership Motion is attached as **Exhibit H**.

11.     The Debtor filed for bankruptcy before the State Court could rule on the Receivership Motion.

**Discovery**

12.     On January 17, 2023, Huntington served extensive discovery demands on the Debtor to obtain more details about the full extent of the Debtor's transfer of assets. A true and accurate copy of these discovery demands are attached as **Exhibit I**.

13.     The Debtor never responded to these discovery demands. However, the Debtor did produce some new and limited information.

14.     On February 22, 2023 the Debtor provided a summary of assets which the Debtor transferred into gift trusts for the benefit of his family. A true and accurate copy of the summary provided by the Debtor is attached as **Exhibit J**.

3

15. On February 22, 2023, the Debtor also provided a summary of the non-marketable securities owned by Debtor and the Debtor's estimated equity value for those interests. A true and accurate copy of this summary is attached as **Exhibit K**.

Dated: March 7, 2023

/s/ David Wechter
DAVID WECHTER

4870-3610-8117, v. 1

4

# EXHIBIT A



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
June 5, 2020 02:00 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 952473

THE HUNTINGTON
NATIONAL BANK AS
ADMINISTRATIVE AGE
vs.
HAROLD SOSNA

A 2002093

**FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH NO JURY DEMAND**

**PAGES FILED: 8**



VERIFY RECORD

EFR200

Judge _____

Case No. _____

THE HUNTINGTON NATIONAL BANK,
as Administrative Agent
41 South High Street
Columbus, Ohio 43287

**COMPLAINT**

       Plaintiff,

vs.

HAROLD SOSNA
4750 Ashwood Drive
Suite 300
Cincinnati, Ohio 45241

FAYE SOSNA
4750 Ashwood Drive
Suite 300
Cincinnati, Ohio 45241

RAYMOND SCHNEIDER
10988 Deerfield Road
Cincinnati, Ohio 45742

       Defendants.

Plaintiff, by its counsel, states as follows:

## PARTIES

1. Plaintiff is The Huntington National Bank, in its capacity as Administrative Agent under the Credit Agreement (as defined below) ("Plaintiff" or "Huntington"), a national banking association with an office at 41 South High Street, Columbus, Ohio 43287.

2. Defendant Harold Sosna is an Ohio resident with an address of 4750 Ashwood Drive, Suite 300, Cincinnati, Ohio 45241.

3.     Defendant Faye Sosna is an Ohio resident with an address of 4750 Ashwood Drive, Suite 300, Cincinnati, Ohio 45241.

4.     Defendant Raymond Schneider is an Ohio resident with an address of 4750 Ashwood Drive, Suite 300, Cincinnati, Ohio 45241.

5.     Defendants Hardold Sosna, Faye Sosna, and Raymond Schneider are collectively referred to herein as "Guarantors", and together with the Borrowers, the "Defendants."

## BACKGROUND

### The Credit Agreement, Guaranty, and Collateral

6.     On or about November 30, 2018, Premier Health Care Management, Inc., Euclid Health Care, Inc., Pleasant Ridge Care Center, Inc., Kenwood Terrace Health Care Center, Inc., Southbrook Health Care Center, Inc., Beechwood Terrace Care Center, Inc., Ivy Health Care, Inc., JZB Realty Holding Co., LLC, Pleasant Ridge Realty, LLC, Ivy Health Realty LLC, Keller Road Realty Co., LLC, Steigler Road Realty, LLC, Seminole Avenue Realty, LLC, and 54 Realty, Ltd. (collectively, the "Borrowers"), Huntington, in its capacity as Administrative Agent, the Lenders (defined therein) and others entered into that certain Credit Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement") pursuant to which the Lenders agreed to extend certain credit facilities to Borrowers, including, without limitation, term loans up to the principal amount of $71,191,999.90 (the "Term Loan") and revolving loans in an amount up to $5,000,000 (the "Line of Credit", together with the Term Loan, the "Loans"). A true and correct copy of the Credit Agreement, without exhibits, is attached hereto as **Exhibit A.**

7.     In connection with the Loans, each of the Guarantors executed and delivered to Huntington, as Administrative Agent, a Guaranty of Payment of Debt dated November 30, 2018

2

(individually and collectively, and as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Guaranty"), pursuant to which each of the Guarantors agreed to unconditionally guaranty, *inter alia*, repayment of the Loans. True and correct copies of the Guaranties executed by Harold Sosna, Faye Sosna, and Raymond Schneider are attached hereto as **Exhibit B, Exhibit C,** and **Exhibit D,** respectively.

8.　　The Credit Agreement and Guaranty, together with all documents evidencing, governing, securing, or relating to the Loans shall be referred to herein as the "Loan Documents."

### Defaults under the Credit Agreement

9.　　Borrowers have committed numerous defaults and Events of Default under the Loan Documents.

10.　　First, current management of Borrowers has been accused by other banking institutions of engaging in alleged bank account irregularities. Borrowers' potential conduct and failure to disclose such events to Huntington is an Event of Default under Section 6.1 and 7.1(b) and 7.1(l) of the Credit Agreement.

11.　　Second, Borrowers misstated their financial condition to Huntington. Despite representing approximately one month ago that Borrowers were in strong financial condition, Borrowers now report that they can barely make payroll and pay unsecured creditors. Borrowers' failure to accurately disclose its financial condition is an Event of Default under Section 6.1 and Section 7.1(b) and 7.1(l) of the Credit Agreement.

12.　　Third, Borrowers have failed to comply with the financial reporting covenants of the Credit Agreement as follows[1]:

　　　　(a)　　Borrowers failed to timely furnish Administrative Agent with the

---

[1]　　Capitalized terms used in this Paragraph have the meanings set forth in the Credit Agreement.

3

Borrower Quarterly Reports for the quarter ended December 31, 2019 in violation of Section 6.1 of the Credit Agreement,

(b)    Borrowers failed to timely furnish Administrative Agent with the Officer's Certificate for the quarter ended December 31, 2019 in violation of Section 6.1(c) of the Credit Agreement,

(c)    Borrowers failed to timely furnish Administrative Agent with the Operating Company Quarterly Report for the quarter ended December 31, 2019 in violation of Section 6.1(e) of the Credit Agreement,

(d)    Borrowers failed to timely furnish Administrative Agent with the Health Care Census for the quarter ended December 31, 2019 in violation of Section 6.1(n) of the Credit Agreement,

(e)    Borrowers failed to timely furnish Administrative Agent with Evidence of Payment of Bed Taxes for the month ended December 31, 2019 in violation of Section 6.1(s) of the Credit Agreement,

(f)    Borrowers failed to timely furnish Administrative Agent with a compliant and signed Borrowing Base Certificate for the month ended January 31, 2020 in violation of Section 6.1(v) of the Credit Agreement,

(g)    Borrowers failed to timely furnish Administrative Agent with Other Information reasonably requested by Lender, including without limitation, an outstanding month-end check log identifying outstanding checks over 30 days compliant in violation of Section 6.1(w) of the Credit Agreement,

(h)    Guarantors (as defined in the Credit Agreement) failed to provide 2018 tax returns in a timely manner,

(i)    Borrowers failed to timely furnish Agent with the Borrower Quarterly Reports for the quarter ended March 31, 2020 in violation of Section 6.1 of the Credit Agreement,

(j)    Borrowers failed to timely furnish Agent with the Officer's Certificate for the quarter ended March 31, 2020 in violation of Section 6.1(c) of the Credit Agreement,

(k)    Borrowers failed to timely furnish Agent with the Operating Company Quarterly Report for the quarter ended March 31, 2020 in violation of Section 6.1(e) of the Credit Agreement,

(l)    Borrowers failed to timely furnish Agent with the Health Care Census for the quarter ended March 31, 2020 in violation of Section 6.1(n) of the Credit Agreement,

(m)    Borrowers failed to timely furnish Agent with Evidence of Payment of

4

Bed Taxes on a monthly basis in violation of Section 6.1(s) of the Credit Agreement, and

(n)     Borrowers failed to disclose multiple Events of Default which constitute a Material Adverse Effect in violation of Section 6.1 (j) of the Credit Agreement.

13.     Additionally, some or all of the Guarantors failed to provide prompt written notice of some or all of the above-referenced events of default when such Guarantors knew or had reason to know that such defaults had occurred, in violation of Section 7.3 of the Guaranty.

14.     By letter dated May 29, 2020, Huntington, at the direction of the Required Lenders (as defined in the Credit Agreement), accelerated the Loans and demanded payment in full of all outstanding obligations thereunder from the Borrowers and Guarantors.

15.     On June 3, 2020, a receiver was appointed by the Court over the assets and operations of the Borrowers.

16.     As of the date of this action, the principal amount of $68,761,383 is due and owing under the Term Loan and the principal amount of $4,975,000 is due and owing under the Line of Credit. In addition, other obligations are or may become due including swap obligations. Interest, fees, and costs, including attorneys' fees, have accrued and are recoverable under the terms and conditions of the Loan Documents.

17.     Plaintiff has and/or may be required to make protective advances under the terms and conditions of the Loan Documents in connection with the Borrowers' receivership, which advances are also obligations of the Borrowers under the Credit Agreement and the Guarantors under the Guaranty.

## COUNT I
## BREACH OF GUARANTY
**(Plaintiff v. Defendant Harold Sosna)**

18.     Plaintiff incorporates all prior paragraphs as if set forth herein.

5

19. Pursuant to the terms and conditions of the Guaranty, Defendant Harold Sosna personally guaranteed the Borrowers' obligations under the Loan Documents, including repayment of the Loans.

20. As set forth above, Borrowers are in default under the terms and conditions of the Loan Documents, and all balances thereunder have been accelerated and are now due and owing in full.

21. Despite demand made by Plaintiff, Defendant Harold Sosna has failed to pay the Loans, and is therefore in default under the terms and conditions of the Guaranty.

22. As a result of Defendant Harold Sosna's default and failure to repay the Loans, the Lenders have incurred damages in the amount of $73,761,383, together with protective advances, interest, fees, attorneys' fees, and costs of suit, and all amounts to which Plaintiff is entitled under the Loan Documents.

## COUNT II
## BREACH OF GUARANTY
### (Plaintiff v. Defendant Faye Sosna)

23. Plaintiff incorporates all prior paragraphs as if set forth herein.

24. Pursuant to the terms and conditions of the Guaranty, Defendant Faye Sosna personally guaranteed the Borrowers' obligations under the Loan Documents, including repayment of the Loans.

25. As set forth above, Borrowers are in default under the terms and conditions of the Loan Documents, and all balances thereunder have been accelerated and are now due and owing in full.

26. Despite demand made by Plaintiff, Defendant Faye Sosna has failed to pay the Loans, and is therefore in default under the terms and conditions of the Guaranty.

6

27.     As a result of Defendant Faye Sosna's default and failure to repay the Loans, the Lenders have incurred damages in the amount of $73,761,383, together with protective advances, interest, fees, attorneys' fees, and costs of suit, and all amounts to which Plaintiff is entitled under the Loan Documents.

### COUNT III
### BREACH OF GUARANTY
**(Plaintiff v. Defendant Raymond Schneider)**

28.     Plaintiff incorporates all prior paragraphs as if set forth herein.

29.     Pursuant to the terms and conditions of the Guaranty, Defendant Raymond Schneider personally guaranteed the Borrowers' obligations under the Loan Documents, including repayment of the Loans.

30.     As set forth above, Borrowers are in default under the terms and conditions of the Loan Documents, and all balances thereunder have been accelerated and are now due and owing in full.

31.     Despite demand made by Plaintiff, Defendant Raymond Schneider has failed to pay the Loans, and is therefore in default under the terms and conditions of the Guaranty.

32.     As a result of Defendant Raymond Schneider's default and failure to repay the Loans, the Lenders have incurred damages in the amount of $73,761,383, together with protective advances, interest, fees, attorneys' fees, and costs of suit, and all amounts to which Plaintiff is entitled under the Loan Documents.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

a.     Money judgment for the amount due under the Guaranty in favor of Plaintiff and against Guarantors, jointly and severally, as set forth above.

b.     For such other legal or equitable relief as may be proper and necessary.

7

Respectfully submitted,

Dated: June 5, 2020

**BUCHANAN INGERSOLL & ROONEY PC**

Attorneys for Plaintiff

By: */s/ Timothy P. Palmer*
Christopher P. Schueller (Ohio ID 0086170)
Timothy P. Palmer (Ohio ID 0086166)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
Christopher.schueller@bipc.com
Timothy.palmer@bipc.com

8

# EXHIBIT B

| THE HUNTINGTON NATIONAL BANK, | : | **Case No. A2002093** |
|---|---|---|
| Plaintiff, | : | **Judge Shanahan** |
| vs. | : | **DECISION ON MOTION FOR SUMMARY JUDGMENT** |
| **HAROLD SOSNA, et al.,** | : | |
| Defendants. | : | |

This case is before this Court on the Motion for Summary Judgment filed by Plaintiff,

The Huntington National Bank ("HNB"). At issue is whether HNB may enforce the Guaranty of

Payment of Debt ("the Guaranty") signed by Defendant, Raymond Schneider ("Schneider").

Schneider claims that he was fraudulently induced to sign the Guaranty and that there is a

genuine issue of material facts preventing summary judgment. Schneider says that HNB knew

facts that were unknown to Schneider, resulting in Schneider undertaking more risk than he

intended to undertake. Had he known the facts, Schneider says he would not have signed the

Guaranty. Schneider has a significant hurdle to overcome: he signed an unambiguous guaranty

in which he guaranteed, "absolutely and unconditionally," "prompt payment in full of all of the

Debt" in the event the Debt is not timely paid. (The Guaranty, paragraph numbered 3.)

## I.    Facts

On November 30, 2018, HNB and other lenders provided $76,691,999.90 in loans

("Loans") to Premier Health Care Management, Inc., Euclid Health Care, Inc., Pleasant Ridge

Care Center, Inc., Kenwood Terrace Health Care Center, Inc., Southbrook Health Care Center,

Inc., Beechwood Terrace Care Center, Inc., Ivy Health Care, Inc., JZB Realty Holding Co., LLC,

Pleasant Ridge Realty, LLC, Ivy Health Realty LLC, Keller Road Realty Co., LLC, Steigler

Road Realty, LLC, Seminole Avenue Realty, LLC, and 54 Realty, Ltd. (collectively,

"Borrowers"), as evidenced by a Credit Agreement ("Credit Agreement") and other loan

documents.  Harold Sosna and Faye Sosna ("the Sosnas") and Schneider personally guaranteed

the loans.  The Guaranty includes the following language, to wit:

> 3.    GUARANTY OF DEBT.    Guarantor hereby absolutely and
> unconditionally guarantees the prompt payment in full of all of the Debt as and
> when the respective parts thereof become due and payable. If the Debt or any part
> thereof shall not be paid in full when due and payable, Agent and the Lenders, in
> each case, shall have the right to proceed directly against Guarantor under this
> Agreement to collect the payment in full of the Debt, regardless of whether or not
> Agent or Lenders shall have theretofore proceeded or shall then be proceeding
> against any Borrower or any other Person obligated on the Debt or Collateral, if
> any, or any of the foregoing, it being understood that Agent and the Lenders, in
> their sole discretion, may proceed against any Borrower or any other Person
> obligated on the Debt and any Collateral, and may exercise each right, power or
> privilege that Agent may then have, either simultaneously or separately, and, in
> any event, at such time or times and as often and in such order as Agent and the
> Lenders, in their sole discretion, may from time to time deem expedient to collect
> the payment in full of the Debt.

On May 2, 2019, Borrowers entered into an amendment to the Credit Agreement and the

Sosnas and Schneider executed a Reaffirmation of Guaranty and Other Loan Documents

("Reaffirmation"), reaffirming the obligations under the Guaranty dated November 30, 2018.

The Reaffirmation provides, in part, as follows:

> The undersigned hereby represent and warrant to Agent and the Lenders,
> and agree with Agent and the Lenders, that the undersigned have no claim or

2

offset against, or defense or counterclaim to. any obligation or liability under the Collateral Documents to which he, she or it is a party, and the undersigned hereby waive and release Agent and the Lenders and all of their respective affiliates, officers, directors, agents, attorneys, employees, shareholders, subsidiaries and representatives from any and all claims, offsets, defenses and counterclaims of which the undersigned is aware, such waiver and release being with full knowledge and understanding of the circumstances and effect thereof and after having consulted legal counsel with respect thereto.

HNB says it notified Borrowers, the Sosnas and Schneider of several defaults under the Credit Agreement on February 27, 2020. Schneider says he was not notified of the defaults and says that HNB only notified and communicated with Harold Sosna ("Sosna"). HNB and Borrowers negotiated potential terms for a forbearance agreement. At approximately the same time HNB and Borrowers were preparing to sign a forbearance agreement, Borrowers disclosed to HNB that Borrower's depository bank had frozen all Borrowers' deposit accounts and refused to release funds to cover Borrowers' payroll, alleging that Borrowers had defrauded it (the depository bank) through a multi-million dollar check kiting scheme resulting in losses of approximately $59 million. Ultimately, HNB accelerated the Loans and demanded payment in full from Borrowers, the Sosnas and Schneider. A receiver was appointed for Borrowers. Schneider says HNB never contacted him or otherwise disclosed to him its knowledge of Sosna's check kiting activities.

When considering a motion for summary judgment, the party opposing the motion is entitled to have the evidence construed most strongly in his favor. Rule 56(C), Ohio Rules of Civil Procedure. For purposes of this motion for summary judgment, the Court is construing the evidence in a light most favorable to Schneider. Schneider states that there are genuine issues of material fact arising from HNB's concealment of material adverse facts relating to: (i) Sosna's deteriorating financial condition; (ii) the financially strapped condition of the entities in the Premier portfolio owned solely by Sosna known as the "JBZ Group"; and (iii) Premier's

3

precarious financial condition. According to Schneider, this concealment caused Schneider to significantly increase his personal liability: he signed an unlimited, 100 percent guaranty of the entire loan despite the fact that he had no interest in the entities known as the "JBZ Group" that received approximately 54 percent of the Loans. Additionally, Schneider had only a 50 percent ownership interest in the other entities in the Premier portfolio known as the "Keller Group." The Keller Group received approximately 46 percent of the Loans.

A prior loan with Fifth Third Bank was the template for the HNB loan. In the Fifth Third loan, Schneider guaranteed only that portion of the loan that was consistent with his 50 percent ownership interest in the Keller Group. He did not guarantee the portion of the loan to the JBZ Group owned solely by Sosna. HNB's initial loan terms for the refinancing required only a limited guaranty from Schneider, consistent with his 50 percent ownership interest in the Keller Group. Schneider says HNB was familiar with Sosna's history with Fifth Third Bank and knew that Sosna, and the JBZ Group, owned solely by Sosna, were financially deteriorating and HNB did not share this information with Schneider.

Specifically, Schneider says HNB concealed the following facts:

(i)    Sosna's personal debt was rapidly increasing and he had a "significant cash flow problem."

(ii)    Sosna had $8 million invested in his personal residence, in addition to a $4 million mortgage, but the property was only appraised at approximately $2 million. Despite this, HNB informed Sosna that it would "take a subjective view" if the appraisal came in low.

(iii)    The JBZ Group was experiencing a decline in quarterly performance in early 2018 when HNB was seeking to become the new lead agent and increase its participation in the Premier Loan.

(iv)    Premier was not covering the payment of its current bills or paying vendors.

(v)    Premier was "holding checks," totaling hundreds of thousands of dollars, because of "cash flow issues."

(vi)    Sosna was drawing significant sums of money from the Keller Group in February 2018 to pay down Premier's line of credit at Fifth Third.

(vii)    MainSource Bank removed Premier's line availability in May 2018 because Premier was overdrawn on its line of credit and its loan was out of compliance.

(viii)    Sosna was not properly disclosing from where revenue was coming.

According to Schneider, none of these facts were communicated by HNB to Schneider. In fact, Schneider says Sosna was charged with communicating the terms of the Loans to Schneider, a silent partner in the Keller Group who was not involved in the day-to-day operations. Sosna was in control and possession of the financial statements for the Keller Group. Schneider had no direct involvement in the negotiation of the loan terms and HNB never contacted Schneider when the loan was being negotiated by Sosna over the course of several months.

HNB paused the financing at one point because Sosna and his entities were not achieving their original projections. The eroding financial condition notwithstanding, HNB revised the loan terms, including requiring Schneider to guaranty 100 percent of the Loans. HNB never contacted Schneider to discuss the revision and HNB never disclosed to Schneider the deteriorating financial condition of Sosna, the JBZ Group or Premier.

According to Schneider, Sosna did not disclose adverse facts to Schneider. In fact, Sosna refused to give financial information to Schneider when Schneider requested it. Sosna falsely represented to Schneider that the Keller Group did not have sufficient value to support its portion of the Loans and HNB would not approve the Loans unless Schneider signed a guaranty for the entire Credit Agreement, all $76 million. Schneider did not know Sosna's statements about the companies' value were false and misleading.

## II.  Law

### A. Summary judgment standard

A court should grant summary judgment if: (1) there is no genuine issue of material fact; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to

but one conclusion when viewing the evidence in favor of the party opposing the motion, and that conclusion is adverse to the party opposing the motion. Ohio Rule of Civil Procedure 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 631 N.E.2d 150 (1994). There is "no requirement . . . that the moving party support its motion for summary judgment with any affirmative evidence[.] [T]he moving party bears [only] the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264, 273 (1996). After a movant meets its burden, the respondent must set forth "specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.*

Summary judgment "must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion." *Murphy v. City of Reynoldsburg,* 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138, 140 (1992). In determining whether a genuine issue of material fact exists, all inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Horton v. Harwick Chem.Corp.*, 73 Ohio St.3d 679,687, 653 N.E.2d 1196 (1995).

### B. Doctrine of increased risk

The unambiguous Guaranty notwithstanding, Schneider argues that, pursuant to the doctrine of increased risk, HNB had a duty to disclose the material adverse facts relating to the precarious financial conditions of Sosna, the JBZ Group and Premier.

According to The Restatement (Third) of Suretyship & Guaranty § 12, the doctrine of

increased risk imposes on lenders a duty to disclose:

> [I]f, before the secondary obligation becomes binding, the obligee:
>
> (a) knows facts unknown to the secondary obligor that materially increase the risk beyond that which the obligee has reason to believe the secondary obligor intends to assume; and
>
> (b) has reason to believe that these facts are unknown to the secondary obligor; and
>
> (c) has a reasonable opportunity to communicate them to the secondary obligor,
>
> the obligee's nondisclosure of these facts to a secondary obligor constitutes a material misrepresentation.

The Restatement (Third) of Suretyship & Guaranty § 12, Comment g, states as follows:

> Determining whether an obligee has reason to believe that certain facts are unknown to the secondary obligor, or that those facts materially increase the risk beyond that which the secondary obligor intends to assume, requires analysis of the facts of the specific case. The nature of the secondary obligor's business and its relationship with the principal obligor, and the ability of the secondary obligor to obtain knowledge of those facts independently, are important factors in the determination.

There is no duty imposed on the creditor to investigate for the secondary obligor's benefit. *Kawasaki Motor Corp., U.S.A. v. Navratil,* 3d Dist. Hancock No. 5-84-26, 1985 Ohio App. LEXIS 9104. Nor is the obligee required to take any particular steps to ascertain whether the secondary obligor is acquainted with facts that the obligee may reasonably believe are known to both of them. The Restatement (Third) of Suretyship & Guaranty § 12, Comment f.

Schneider argues that HNB had reason to believe that the material adverse facts relating to the precarious financial conditions of Sosna, the JBZ Group and Premier were unknown to Schneider because Schneider had no ownership interest in the JBZ Group and was a silent partner in the Keller Group, but HNB took no steps to disclose these facts to Schneider. Specifically, Schneider argues that there is a genuine issue of fact whether 1) HNB knew that Schneider didn't know his risk had been materially increased beyond that which HNB had reason

7

to believe Schneider intended to assume; 2) HNB had reason to believe the facts were unknown to Schneider; and 3) HNB had a reasonable opportunity to communicate those facts to Schneider.

Schneider relies on *Fifth Third Bank v. N. Cincinnati Serv. Corp.*, 1981 Ohio App. LEXIS 13818, **3-4 (1st Dist.1981), for the proposition that "one who is sought to be held liable as guarantor may defeat the action by showing that the purported...guaranty was not executed by him freely, voluntarily, or understandingly, but that his execution of the instrument was procured by imposition, fraud, concealment or misrepresentation."

### C. Fraud in the inducement

"A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. 'The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution....'" *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998). Under Ohio law, the elements of a fraudulent inducement claim are: "(1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of fact; (2) which is material to the transaction; (3) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (4) intent to induce reliance on the representation; (5) justifiable reliance; and (6) injury proximately caused by the reliance." *DeJohn v. DiCello,* 2011-Ohio-471, ¶ 44 (8th Dist.2011) (citing *Info. Leasing Corp. v. Chambers,* 152 Ohio App.3d 715, 740, 2003-Ohio-2670, 789 N.E.2d 1155 (1st Dist.2003)).

### D. Debtor-creditor relationship

"[T]he duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or similar relation of trust and confidence between them." *BAS Broadcasting Inc. v. Fifth Third Bank,* 2018-Ohio-1325, 110 N.E.3d 171, ¶ 18 (6th Dist.

8

2018). Under Ohio law, "a debtor-and-creditor relationship does not generally create a fiduciary relationship." *Groob v. KeyBank*, 108 Ohio St.3d 348, 351, 2006-Ohio-1189, 843 N.E.2d 1170 (2006).

> The term "fiduciary relationship" has been defined as a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115, 69 Ohio Ops.2d 512, 321 N.E.2d 603 (1974). Similarly, "fiduciary" has been defined as " ' "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." ' " *Strock v. Pressnell* 38 Ohio St.3d 207, 216. 527 N.E.2d 1235(1988), (quoting *Haluka v. Baker*, 66 Ohio App. 308, 312, 20 Ohio Opinions 136, 34 N.E.2d 68 (1941)), (quoting 1 Restatement of the Law, Agency (1933), Section 13, Comment a).

*Groob v. KeyBank*, 108 Ohio St.3d at 351, 2006-Ohio-1189.

"Absent 'special circumstances,' Ohio law does not recognize a fiduciary duty between a bank and its customer." *BAS Broadcasting Inc. v. Fifth Third Bank*, 2018-Ohio-1325, 110 N.E.3d 171, ¶ 18 (6th Dist. 2018).

The debtor/creditor relationship, without more, is not a relationship that would give rise to a duty to disclose. *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988). "[I]n business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other." *Id.* at 101.

### E. Mitigation of damages

Schneider argues that HNB had a separate and independent duty after closing the loan to disclose to Schneider information relating to Premier's continuing precarious financial condition and a duty to disclose HNB's knowledge of Sosna's check kiting activities in February 2020. According to Schneider, HNB's failure to disclose the foregoing prevented Schneider from stepping in, mitigating losses and salvaging the Keller Group companies in which he had a 50

percent ownership interest. Schneider states that, pursuant to the "mitigation doctrine of avoidable consequences," a party who makes a claim on a contract cannot receive damages that it could have avoided.

Under Ohio law, the injured party in a breach of contract action has a duty to mitigate damages, meaning that the injured party cannot recover damages "that it could have prevented by 'reasonable affirmative action.'" *Four Seasons Environmental, Inc. v. Westfield Cos.*, 93 Ohio App.3d 157, 159, 638 N.E.2d 91 (1st Dist.1994), quoting *F. Ents. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 351 N.E.2d 121 (1976), paragraph three of the syllabus. An injured party need only use "reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages." *Provident Bank v. Barnhart*, 3 Ohio App.3d 316, 320, 445 N.E.2d 746 (1st Dist.1982). The failure to mitigate damages is an affirmative defense, meaning that the burden of proof lies with the breaching party. *Jindal Builders & Restoration Corp. v. Brown & Cris*, 1997 Ohio App. LEXIS 4768, *3 (1st Dist.1997).

The burden of proof on this issue lies with Schneider. Schneider says that HNB never contacted Schneider or otherwise disclosed to him its knowledge of Sosna's fraudulent check kiting activities. Schneider argues that "instead of contacting Schneider when it discovered the check kiting, HNB sought recourse for Sosna's fraudulent conduct by moving for the appointment of a receiver over Premier and filing this lawsuit against Schneider on the Guaranty." (Schneider Opposition to Motion for Summary Judgment, p. 21.) According to Schneider, this prevented Schneider from having any opportunity to step in and mitigate any losses and salvage the Keller Group companies.

10

### III.    Discussion

This Court must decide whether, in view of Schneider's clear and unambiguous Guaranty, there is a genuine issue of material fact whether HNB concealed material adverse facts from Schneider and fraudulently induced Schneider to sign the Guaranty.

The Guaranty provides as follows:

> 5.5    Liabilities Absolute and Unconditional.    Guarantor's liabilities and other obligations under this Agreement shall be absolute and unconditional irrespective of any lack of validity or enforceability of the Credit Agreement, any Note, any Loan Document or any other agreement, instrument or document evidencing the Debt or related thereto, or any other defense available to Guarantor in respect of this Agreement.

Schneider argues that he did not waive liability arising from fraud nor did he waive any claims of which he was not aware.

This Court finds that a waiver "of any other defense available" is enforceable, that it means any other defense, and that it means any other defense available at the time of execution of the document, whether known or unknown to the guarantor at the time of signing. *Kraft Elec. Cont., Inc. v. Lori A. Daniels Irrevocable Trust,* 2019-Ohio-2029, 136 N.E.3d 951 (1st Dist.2019). *See also: Task v. Nat'l City Bank,* 1994 WL 43883(8th Dist.1994) (given the broad language of the release, it was incumbent upon releasor to ascertain, at that time, whether he had any causes of action against defendant, and if so, to expressly manifest his intent to exclude those claims from the scope of the release).[1]

---

[1] The Reaffirmation of Guaranty provides that Schneider waives defenses and counterclaims of which he is aware. It also states that Schneider reaffirmed each of his respective obligations under his Guaranty, including the waiver of any defenses available to him. The Court will discuss this ambiguity, *infra.*

Schneider argues that he is a surety rather than a guarantor and that, because of his position as surety, he may avail himself of the doctrine of increased risk. In Ohio, "the primary distinction between a 'surety' and a 'guarantor' is the surety is primarily liable with a principal but 'the liability of a guarantor is secondary and collateral if the principal does not perform.'" *Manor Care Nursing & Rehab Ctr. v. Thomas,* 123 Ohio App.3d 481, 486-487(1st Dist. 1997). The Court finds that Schneider is a guarantor. He was not primarily liable for the debt. HNB could only pursue Schneider after there was a default by the primary obligor. Thus, as a guarantor, the doctrine of increased risk would not apply to Schneider.

However, the Restatement (Third) of Suretyship & Guaranty, which Schneider asserts has been adopted by the General Assembly, abandons the distinction between guaranty and surety and speaks instead in terms of "secondary obligor" and "secondary obligation."

Regarding Schneider as a "secondary obligor" under the doctrine of increased risk, the Court will consider whether HNB knew facts unknown to Schneider that materially increased the risk beyond that which HNB had reason to believe Schneider intended to assume; and whether HNB had reason to believe that these facts were unknown to Schneider; and whether HNB had a reasonable opportunity to communicate the facts to Schneider. Under the doctrine of increased risk, if those elements are present, HNB's nondisclosure of these unknown facts to Schneider may constitute a material misrepresentation.

Schneider says that HNB charged Sosna with the task of communicating to Schneider matters pertaining to the Loans and the Guaranty. Construing the facts most favorably to Schneider as the Court must do at the summary judgment stage, the Court finds that it is plausible that HNB knew facts unknown to Schneider that materially increased the risk beyond that which HNB had reason to believe Schneider intended to assume; and that HNB had reason

12

to believe that these facts were unknown to Schneider because Sosna would not have been motivated to share them with Schneider.

However, Schneider has further obstacles to overcome in order to defeat HNB's motion. As stated *supra,* the elements of a fraudulent inducement claim are: "(1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of fact; (2) which is material to the transaction; (3) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (4) intent to induce reliance on the representation; (5) justifiable reliance; and (6) injury proximately caused by the reliance." *DeJohn v. DiCello*, 2011-Ohio-471, ¶ 44 (8th Dist.2011) (citing *Info. Leasing Corp. v. Chambers,* 152 Ohio App.3d 715, 740, 2003-Ohio-2670, 789 N.E.2d 1155 (1st Dist.2003).

The relationship between HNB and Schneider was a debtor-creditor relationship. Paragraph numbered 13. in the Guaranty from Schneider to HNB provides, in part, as follows:

> The relationship between (a) Guarantor and (b) Agent with respect to this Agreement is and shall be solely that of debtor and creditor, respectively, and Agent shall have no fiduciary obligation toward Guarantor with respect to this Agreement or the transactions contemplated hereby.

By the parties' agreement, this was not a fiduciary relationship. HNB, by undertaking to refinance the loan, did not undertake to "to act primarily for the benefit of another (Schneider) in matters connected with his undertaking." *Groob v. KeyBank,* 108 Ohio St.3d 348, 351, 2006-Ohio-1189 (2006). As Schneider states, "HNB was anxious to get the Premier financing, enhance its fees, and secure a larger percentage of the Premier Loan." (Schneider Opposition to Motion for Summary Judgment, p. 7) "The financial incentives for HNB in securing the Premier refinancing were manifest. Closing a loan of this magnitude would generate for HNB nearly $300,000 in private revenue from Sosna and significant 'relationship revenue' from the refinance

13

– over $700,000...." (Schneider Opposition to Motion for Summary Judgment, p. 8). HNB was not acting for Schneider's benefit. The relationship was that of debtor-creditor. As such, the Court finds there was not a duty to disclose, one of the elements of a fraudulent inducement claim.

Moreover, Schneider's reliance on HNB was not justified, another of the elements for a fraudulent inducement claim. Schneider is a sophisticated businessman and has guaranteed payment of more than one commercial loan. Schneider and Sosna were business partners, each owning a 50 percent interest in the Keller Group. Schneider knew that in prior financing with Fifth Third Bank, and in HNB's initial loan terms for the loan which is the subject matter of this case, only a limited guaranty was required from Schneider, consistent with his 50 percent ownership interest in the Keller Group. Schneider knew there was a pause in the refinancing with HNB between March 2018 and November 2018. Finally, despite Schneider's repeated requests to Sosna, Sosna refused to provide Schneider with vital information about any of the entities in the Premier portfolio that were part of the financing provided by HNB. Yet, when presented with a document obligating him to guaranty 100 percent of the loan, Schneider signed. "When the circumstances would cause a person of ordinary care to investigate, and that person fails to do so, the element of justifiable reliance will not be proven." *Riccardi v. Levine,* 2000 WL 573188, *3 (Ohio 8th Dist.).

According to Schneider, he was unaware of the defense of fraudulent inducement at the time he signed the Guaranty. In light of the Court's finding that Schneider cannot establish duty and justifiable reliance, this Court finds that the ambiguities between the Guaranty and the Reaffirmation of Guaranty are not significant. Schneider cannot establish the elements of a claim for fraudulent inducement. Accordingly, even if the defense of fraudulent inducement was not

14

waived, there is no genuine issue of material fact that all of the elements necessary for a claim for fraudulent inducement are not present.

Regarding the argument of mitigation of damages and continuing duty to disclose, the Court finds that, as there was no duty to disclose before the Credit Agreement and Guaranty were signed, there is not a duty of disclosure after signing. Further, pursuant to the terms of the Guaranty, HNB was entitled to exercise each right, power or privilege that it had, either simultaneously or separately, at such time or times and as often and in such order as HNB deemed expedient to collect the payment in full of the debt. HNB did not have a duty to provide Schneider an opportunity to step in and mitigate any losses and salvage the Keller Group companies.

### IV.   Conclusion

Having fully considered the papers filed, the arguments of counsel and the relevant case law, the Court finds that (1) there is no genuine issue of material fact; (2) HNB is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion when viewing the evidence in favor of Schneider, and that conclusion is adverse to Schneider.

The parties shall submit an entry in accordance with Local Rule 17 of the Hamilton County Local Rules.

Megan E. Shanahan, Judge        11/18/22

**ENTERED**

NOV 18 2022

15

Copy to:

Christopher P. Schueller
christopher.schueller@bipc.com

Timothy P. Palmer
timothy.palmer@bipc.com

Richard S. Wayne
rswayne@strausstroy.com

Ryan F. Hemmerle
rfhemmerle@strausstroy.com

Alan J. Statman
ajstatman@statmanharris.com

William B. Fecher
wbfecher@statmanharris.com

Jeffrey A. Levine
jalevine@strausstroy.com

**EXHIBIT C**

18 **COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
Judge Megan Shanahan
Case No. A2002093



COURT OF COMMON PLEAS
ENTER
HON. MEGAN E. SHANAHAN
THE CLERK SHALL SERVE NOTICE
TO PARTIES PURSUANT TO CIVIL
RULE 58 WHICH SHALL BE TAXED
AS COSTS HEREIN

THE HUNTINGTON NATIONAL BANK,

    Plaintiff,

vs.

HAROLD SOSNA, FAYE SOSNA, and
RAYMOND SCHNEIDER,

    Defendants.

**JUDGMENT ENTRY AGAINST
DEFENDANT RAYMOND
SCHNEIDER**

ENTERED

DEC 13 2022

D136888873

This matter comes before the Court upon the Motion for Summary Judgment filed herein by Plaintiff The Huntington National Bank ("Plaintiff") on August 13, 2020 ("Motion for Summary Judgment") against Defendant Raymond Schneider ("Mr. Schneider"), and the Court further GRANTS the Motion for Summary Judgment for money damages against the Defendant Mr. Schneider for good cause shown.

The Court accordingly enters judgment in favor of Plaintiff against Mr. Schneider as follows:

1.    In the amount of $75,599,410.00 as of July 28, 2020, plus interest accruing thereafter, broken down as follows and at the per diem interest rates set forth below (the defined terms Term Loan and Line of Credit are as set forth in the Motion for Summary Judgment):

| | |
|---|---|
| Term Loan Principal: | $ 68,740,574.09 |
| Term Loan Interest: | $ 1,758,133.09 |
| **Total Term Loan Balance:** | **$ 70,498,708.08** |
| Line of Credit Principal: | $ 4,973,486.88 |
| Line of Credit Interest: | $ 127,214.04 |

**Total Line of Credit Balance:** $ 5,100,700.92

**Total Balance of Loans:**   $ 75,599,410.00

Term Loan Interest:   $14,661.31 *per diem*
Line of Credit Interest:   $1,059.11 *per diem*

IT IS SO ORDERED.

JUDGE MEGAN SHANAHAN

APPROVED:

*/s/ Christopher P. Schueller*
Christopher P. Schueller (0086170)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Christopher.schueller@bipc.com
*Counsel for Plaintiff The Huntington National Bank*

**ENTERED**

DEC 13 2022

OBJECTION NOTED AND OVERRULED:

*/s/ Richard S. Wayne*
Richard S. Wayne (0022390)
Strauss Troy Co., LPA
The Federal Reserve Building
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
rswayne@strausstroy.com
*Counsel for Defendant Raymond Schneider*

CONSENTED AS TO FORM:

*/s/ William B. Fecher*
William B. Fecher (0039240)
Statman, Harris & Eyrich, LLC
35 E. 7th Street, Suite 315
Cincinnati, OH 45202
wbfecher@statmanharris.com
*Counsel for Defendants Harold Sosna and Faye Sosna*

2

# EXHIBIT D

COURT OF COMMON PLEAS
ENTER
HON. MEGANE SHANAHAN
THE CLERK SHALL SERVE NOTICE
TO PARTIES PURSUANT TO CIVIL
RULE 58 WHICH SHALL BE TAXED
AS COSTS HEREIN.

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
Judge Megan Shanahan
Case No. A200 2093

THE HUNTINGTON NATIONAL BANK,

   Plaintiff,

 vs.

HAROLD SOSNA, FAYE SOSNA, and
RAYMOND SCHNEIDER,

   Defendants.

**AMENDED JUDGMENT ENTRY**
**AGAINST DEFENDANT**
**RAYMOND SCHNEIDER**



D137431764

ENTERED
FEB 1 5 2023

This matter comes before the Court upon the Motion for Summary Judgment filed herein by Plaintiff The Huntington National Bank ("Plaintiff") on August 13, 2020 ("Motion for Summary Judgment") against Defendant Raymond Schneider ("Mr. Schneider"), and the Court further GRANTS the Motion for Summary Judgment for money damages against the Defendant Mr. Schneider for good cause shown.

The Court accordingly enters judgment in favor of Plaintiff against Mr. Schneider as follows:

1. In the amount of $75,599,410.00 as of July 28, 2020, plus interest accruing thereafter, broken down as follows and at the per diem interest rates set forth below (the defined terms Term Loan and Line of Credit are as set forth in the Motion for Summary Judgment):

| | |
|---|---|
| Term Loan Principal: | $ 68,740,574.09 |
| Term Loan Interest: | $ 1,758,133.09 |
| **Total Term Loan Balance:** | **$ 70,498,708.08** |
| Line of Credit Principal: | $ 4,973,486.88 |
| Line of Credit Interest: | $ 127,214.04 |

Total Line of Credit Balance: $ 5,100,700.92

Total Balance of Loans:       $ 75,599,410.00

Term Loan Interest:           $14,661.31 *per diem*
Line of Credit Interest:      $1,059.11 *per diem*

IT IS SO ORDERED.

JUDGE MEGAN SHANAHAN                    2/15/23

**NOTICE. This is a final appealable order
and there is no just reason for delay.
The Clerk is directed to serve upon all
parties notice of this Judgment Entry and
its date of entry upon the journal in accordance
with Civ.R. 5(B), in the manner provided in Civ.R. 58(B).**

**ENTERED**

FEB 15 2023

APPROVED:

*/s/ Christopher P. Schueller*
Christopher P. Schueller (0086170)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Christopher.schueller@bipc.com
*Counsel for Plaintiff The Huntington National Bank*

OBJECTION NOTED AND OVERRULED:

*/s/ Richard S. Wayne*
Richard S. Wayne (0022390)
Strauss Troy Co., LPA
The Federal Reserve Building
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
rswayne@strausstroy.com
*Counsel for Defendant Raymond Schneider*

2

CONSENTED AS TO FORM:

*/s/ William B. Fecher*
William B. Fecher (0039240)
Statman, Harris & Eyrich, LLC
35 E. 7th Street, Suite 315
Cincinnati, OH 45202
wbfecher@statmanharris.com
*Counsel for Defendants Harold Sosna and Faye Sosna*


SUBMITTED BY:

**BUCHANAN INGERSOLL & ROONEY PC**

*s/ Christopher P. Schueller*
Christopher P. Schueller (Ohio ID 0086170)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
Christopher.schueller@bipc.com
*Counsel for Plaintif The Huntington National Bank*

# EXHIBIT E

# PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:**  **Huntington Bank**                    **6/1/2019**

| | |
|---|---|
| **Name:** | RAYMOND SCHNEIDER |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE |
| **City, State & Zip:** | Cincinnati, Ohio 45241 |
| **Occupation:** | Developer / NH Administrator |
| **Business Address:** | 10988 Deerfield Road |
| **City, State & Zip:** **Business Phone:** | Cincinnati, Ohio 45242        842-2359 |
| **Financial Condition As Of:** | 6/1/2019 |

| | | | |
|---|---|---|---|
| **Cash On Hand:** | $ 775,000 | **Notes Payable Bank Secured:** | $ 54,043,000 |
| **Marketable Securities: (See Schedule A)** | $ 13,605,400 | **Notes Payable Bank Unsecured:** | $ 23,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 96,100,000 | **Amounts Payable To Others Secured:** | $ 25,000 |
| **Securities Held-Broker: In Margin Accounts** | $ 13,605,400 | **Amounts Payable To Others Unsecured:** | $ 85,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 20,920,000 | **Amounts and Bills Due:** | $ 40,000 |
| **Real Estate Owned: (See Schedule D)** | $ 3,500,000 | **Real Estate Mortgages Payables** | $ 711,000 |
| **Loans Receivable:** | $ 1,500,000 | **See Schedules C & D)** | $ 19,078,000 |
| **Automobiles & Other Personal Property:** | $ 450,000 | **Other Debts:** | |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 653,500 | | |
| **Other Assets:** | $ 850,000 | | |
| **TOTAL ASSETS** | $ 151,959,300 | **TOTAL LIABILITIES:** | $ 74,005,000 |
| | | **NET WORTH** | $ 77,954,300 |

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 19,454,400 |
| N/A | LMA Loan | RBS | Merrill Lynch Loan Liquidity beyond pledge | $ 5,849,000 $ 13,605,400 |

## SCHEDULE B NON- MARKETABLE SECURITIES

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | Market Value: |
|---|---|---|---|---|
| 100% | Land/Office/Wrhse-EG | RBS | NO | $ 1,600,000 |
| 100% | Land | Hyde P. Circle | Yes | $ 650,000 |
| 100% | Pet Mall | Boston RD | Yes | $ 12,000,000 |
| 100% | Amelia | GRHPR | Yes | $ 3,500,000 |
| 100% | 74 Self Storage | GRHPR | Yes | $ 4,400,000 |
| 100% | Blue Ash | GRHPR | Yes | $ 6,800,000 |
| 100% | Circle Colerain | GRHPR | Yes | $ 8,500,000 |
| 100% | Horizon Health Mgt. | GRHPR | Yes | $ 550,000 |
| 100% | West Chester | GRHPR | Yes | $ 3,500,000 |
| 100% | Ivy Knoll | IKRD | Yes | $ 5,500,000 |
| 100% | Cinti Red Dog | RD Realty | Yes | $ 6,600,000 |
| 85% | the RED | HPC | NO | $ 31,500,000 |
| 100% | Retail | Retail | NO | $ 1,000,000 |
| 100% | Saugus Red Dog | Saugus RD | YES | $ 5,500,000 |
| 100% | Mason Red Dog | RD Realty | Yes | $ 4,500,000 |
| | | | | $ 96,100,000 |

## SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| NHome-Various | HRM Realty | 33% | Various | $ 296,000 | $ 210,000 | $ 78,000 |
| Various-Apt Blgs | RH Investmt | 50% | Various | $ 288,000 | $ 100,000 | $ 38,000 |
| HRM/Horizon | RBS LLC | 33% | 1973 | $ 2,000,000 | $ 1,000,000 | $ - |
| West Chester RD | West Chester | 10% | 2016 | $ 660,000 | $ 750,000 | $ 560,000 |
| 54/72 Various | 54/72 Kenwood | 50% | 2000 | $ 13,000,000 | $ 18,500,000 | $17,500,000 |
| Warehouse | All Realty | 33% | 1979 | $ 6,000 | $ 110,000 | $ 45,000 |
| Alternative Home Care | Alternative | 25% | 2001 | $ 85,000 | $ 250,000 | $ 146,000 |
| | | | | | $ 20,920,000 | $18,367,000 |

| Address & Type: | Title In Name Of: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: | Monthly Payments: |
|---|---|---|---|---|---|---|
| Tiffany Ridge Colorado.* | RBS | 1985 | $ 345,000 | $ 850,000 | $ 320,000 | $ 2,600 |
| Eastgate | RBS | 1995 | $ 495,000 | $ 1,250,000 | $ 391,000 | $ 2,900 |
|  | RBS | 1994 | $ 120,000 | $ 1,400,000 | $ - | $ - |
|  | TOTAL |  | $ 960,000 | $ 3,500,000 | $ 711,000 | $ 5,500 |

* Rental income 1100 mth

## SCHEDULE E - LIFE INSURANCE

| Company: | Name Of Policy: | Owner: | Benificiary Amount: | Face Loans: | Policy Value: | Cash Surrender: |
|---|---|---|---|---|---|---|
| Prudential | RBS | WIFE | $ 4,800,000 | N/A | $ 4,800,000 | $ 258,000 |
| Prudential | RBS | WIFE | $ 500,000 | N/A | $ 500,000 | $ 278,500 |
| Guardian | RBS | WIFE | $ 500,000 | N/A | $ 535,000 | $ 117,000 |
|  |  | TOTAL | $ 5,800,000 |  | $ 5,835,000 | $ 653,500 |

## BANKS WHERE CREDIT HAS BEEN OBTAINED

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| Huntington Bank | RBS | S | 2016 | $ 17,500,000 | $ 17,100,000 | $ 62,000 |
| Bank GE Credit | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 12,000 |
| SBA | BRD LLC. | S | 2009 | $ 5,000,000 | $ - | $ - |
| Bluehills Bank | RD LLC. | S | 2009 | $ 6,250,000 | $ 5,840,000 | $ 32,500 |
| First Financial | RBS | S | 2015 | $ 7,000,000 | $ 6,595,000 | $ 21,300 |
| Integra Bank | RBS | S | 2004 | $ 6,600,000 | $ - | $ - |
| Stockyard Bank | GRSHP LLC. | S | 2015 | $ 18,500,000 | $ 17,855,000 | $ 59,500 |
| BB&T/BofK | RD Cincy | S | 2009 | $ 14,250,000 | $ 1,455,000 | $ 3,650 |
| Aegon | the RED | S | 2018 | $ 45,000,000 | $ 24,996,000 | $ 126,000 |
|  |  | TOTAL |  | $ 123,350,000 | $ 34,965,000 | $ 190,950 |

## TOTAL ASSETS

Sources of Income for the Year Ending:          12/31/2018

| | |
|---|---|
| Interest Income | $ 245,000 |
| Depreciation/Deduct | $ (415,000) |
| Real Estate Income:ADJ-Inc | $ (1,070,000) |
| Other Income: | $ 3,439,000 |
| TOTAL | $ 2,199,000 |

Signature:

Date Signed:

**EXHIBIT F**

# PERSONAL FINANCIAL STATEMENT

**CONFIDENTIAL TO:** Capital Partners

9/1/21

| | |
|---|---|
| **Name:** | RAYMOND SCHNEIDER |
| **Residence Address:** | 3515 TIFFANY RIDGE LANE |
| **City, State & Zip:** | Cincinnati, Ohio 45241 |
| **Occupation:** | Developer Operator |
| **Business Address:** | 10988 Deerfield Road |
| **City, State & Zip: Business Phone:** | Cincinnati, Ohio 45242 842-2359 |
| **Finanacial Condition As Of:** | 9/1/21 |

| | | | | |
|---|---|---|---|---|
| **Cash On Hand:** | $ 47,000 | **Amounts and Bills Secured:** | $ 32,000 |
| **Marketable Securities: (See Schedule A)** | $ 18,200,000 | **Debt Marketable Securities: (See Schedule A)** | $ 14,950,000 |
| **Non-Marketable Securities: (See Schedule B)** | $ 124,700,000 | **Debt Non-Marketable Securities (See Schedule F)** | $ 113,736,000 |
| **Partial Interest In Real Estate:(See Schedule C)** | $ 1,930,000 | **Debt Partial Interests In RE: (See Schedule C)** | $ 1,040,000 |
| **Real Estate Owned: (See Schedule D)** | $ 1,650,000 | **Debt Real Estate Owned: (See Schedule D** | $ 690,000 |
| **Loans Receivable:** | $ 8,000 | **Notes Payable Bank Unsecured:** | $ 25,000 |
| **Automobiles & Other Personal Property:** | $ 275,000 | **Amounts Payable to Others Secured:** | $ 10,000 |
| **Cash-Value L-Insurance: (See Schedule E)** | $ 1,065,000 | **Amounts Payable to Others Unsecured:** | $ 5,000 |
| **Other Assets:** | $ 320,000 | | |
| **TOTAL ASSETS** | $ 148,213,000 | **TOTAL LIABILITIES:** | $ 130,488,000 |
| | | **NET WORTH** | $ 17,725,000 |

| # of Shares Face Value: (Bonds) | Description: | In Name Of: | Are These Pledged: | Market Value: | |
|---|---|---|---|---|---|
| N/A | Various | RBS | Yes | $ 18,200,000 | |
| N/A | LMA Loan | RBS | Merrill Lynch Loan | $ 14,950,000 | |
| | | | Liquidity beyond pledge | $ 3,250,000 | |

## SCHEDULE B NON- MARKETABLE SECURITIES

| # of Shares Face Value: | Description: | In Name Of: | Are These Pledged: | | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| 100% | Office-EG | RBS | Yes | | $ 400,000 | $ 250,000 |
| 80% | Atlanta | Red Dog | Yes | | $ 3,600,000 | $ 3,300,000 |
| 1% | Pet Mall | Trust-Boston RD | Yes | | $ 8,000,000 | $ 6,875,000 |
| 1% | Amelia | Trust-GRHPR | Yes | | NA | $ - |
| 1% | 74 Self Storage | Trust-GRHPR | Yes | | NA | $ - |
| 1% | Blue Ash | Trust-GRHPR | Yes | | NA | $ - |
| 1% | Circle Colerain | Trust-GRHPR | Yes | | NA | $ - |
| 1% | Springdale CS | Trust-GRHPR | Yes | | NA | $ - |
| 1% | West Chester | Trust-GRHPR | Yes | Loan Pack | $ 35,000,000 | $ 31,700,000 |
| 80% | Ivy Knoll | IKRD | Yes | | $ 4,100,000 | $ 3,700,000 |
| 1% | Cintl Red Dog | Trust-RD Realty | Yes | | $ 4,250,000 | $ 3,450,000 |
| 1% | the RED | Trust-RED | Yes | | $ 47,000,000 | $ 44,700,000 |
| 1% | Red Dog Saugus | Trust-NSRD | Yes | | $ 4,650,000 | $ 3,890,000 |
| 80% | RED Corner | CD | Yes | | $ 10,500,000 | $ 9,700,000 |
| 100% | Oaklawn | CD | Yes | | $ 200,000 | $ 190,000 |
| 100% | 9314 Kenwood Rd | CD | Yes | | $ 2,400,000 | $ 2,024,000 |
| 100% | Lebanon Krogers | CD | Yes | | $ 1,000,000 | $ 950,000 |
| 50% | Retail | Retail | Yes | | $ 850,000 | $ 550,000 |
| 1% | Mason Red Dog | Trust-RD | Yes | | $ 2,750,000 | $ 2,457,000 |
| | | | | | $ 124,700,000 | $ 113,736,000 |

## SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE

| Address & Type Of Property | Title In Name Of: | % Of Own: | Date Aquired: | Cost: | Market Value: | Mortgage Balances: |
|---|---|---|---|---|---|---|
| Hamilton Proply | RBS | 5% | Various | $ 160,000 | $ 210,000 | NA |
| Richwood | RBS | 4% | Various | $ 185,000 | $ 220,000 | NA |
| Point Blank | RBS LLC | 1% | 2018 | $ 125,000 | $ 175,000 | NA |
| Dillionvale SC | RBS | 6% | 2000 | $ 85,000 | $ 125,000 | $ 65,000 |
| 54/72 | Taken by RECEIVER | 50% | Various | $ 13,000,000 | NA | NA |
| Kenwood Chili | Kenwood LLC. | 100% | 2021 | $ 1,200,000 | $ 1,200,000 | $ 976,000 |
| | | | | | $ 1,930,000 | $ 1,040,000 |

Financial Statement

| Address & Type: | Title In Name Of: | Date Aquired: | | Cost: | | Market Value: | | Mortgage Balances: | | Monthly Payments: |
|---|---|---|---|---|---|---|---|---|---|---|
| Tiffany Ridge | RBS | 1985 | $ | 345,000 | $ | 750,000 | $ | 300,000 | $ | 2,600 |
| Colorado.* | RBS | 1995 | $ | 495,000 | $ | 900,000 | $ | 390,000 | $ | 2,900 |
| **TOTAL** | | | $ | 840,000 | $ | 1,650,000 | $ | 690,000 | $ | 5,500 |

\* Rental income 1100 mth

### SCHEDULE E - LIFE INSURANCE

| Company: | Name Of Policy: | Owner: | | Benificiary Amount: | Face Loans: | Policy Value: | | Cash Surrender: |
|---|---|---|---|---|---|---|---|---|
| Lincoln National | RBS | WIFE | $ | 3,250,000 | N/A | $ | 3,250,000 | $1,085,000 |
| Lincoln National | RBS | WIFE | $ | 10,000,000 | N/A | $ | 10,000,000 | -0- |
| | | **TOTAL** | $ | 13,250,000 | | $ | 13,250,000 | $1,085,000 |

### BANKS WHERE CREDIT HAS BEEN OBTAINED

| Name Of Lender: | Credit In Name Of: | Secured Unsecured: | Original Date: | High Credit: | Current Balance: | Monthly Payment: |
|---|---|---|---|---|---|---|
| 5/3 | RBS | S | 2016 | $ 17,500,000 | $          - | $          - |
| Huntington Bank GE Credit | Red Dog RD | S | 2016 | $ 3,250,000 | $ 3,220,000 | $ 18,000 |
| SBA | BRD LLC. | S | 2009 | $ 3,500,000 | $          - | $          - |
| Blue Hills | RD LLC. | S | 2009 | $ 11,250,000 | $ 10,540,000 | $ 35,500 |
| Civista Bank | RBS | S | 2015 | $ 12,000,000 | $ 9,695,000 | $ 44,300 |
| Aegon | RBS | S | 2017 | $ 45,000,000 | $ 44,700,000 | $ 220,000 |
| First Merchant | BRSHP LLC. | S | 2019 | $ 35,000,000 | $ 29,875,000 | $ 156,500 |
| Synovous | RBS | S | 2019 | $ 3,500,000 | $ 3,275,000 | $ 13,589 |
| | **TOTAL** | | | $113,500,000 | $ 101,305,000 | $ 487,889 |

Signature:

9/1/21

# EXHIBIT G

# COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

### Judge Megan Shanahan

### Case No. A2002093

THE HUNTINGTON NATIONAL BANK,

        Plaintiff,

vs.

HAROLD SOSNA, FAYE SOSNA, and
RAYMOND SCHNEIDER,

        Defendants.

**EMERGENCY MOTION OF
PLAINTIFF FOR THE
APPOINTMENT OF A RECEIVER**

Pursuant to Rule 66 of the Ohio Civil Rules and Section 2735.01, *et. seq.* of the Ohio Revised Code, Plaintiff and Judgment Creditor The Huntington National Bank, as Administrative Agent ("Huntington"), by and through its undersigned counsel, Buchanan Ingersoll & Rooney PC, files the within Emergency Motion for Appointment of a Receiver ("Motion") over the assts of Defendant and Judgment Debtor Raymond Schneider ("Schneider"), and in support thereof respectfully states as follows:

1.     Huntington holds a money judgment against Schneider in the amount of $75,599,410 as of August 13, 2020. The current balance owed under this judgment is approximately $27 million. Schneider has already diverted at least $38,842,800 of his personal assets to avoid the judgment collection efforts of Huntington. By Schneider's own admission, this has resulted in Schneider's personal net worth dropping from $56,567,800 to $17,725,000. Most of Schneider's remaining assets consist of non-marketable minority interests in limited liability companies. Huntington will have a difficult, if not impossible, time collecting against these illiquid assets.

2. Over a two year period of time, Schneider has engaged in fraudulent conveyances and other tactics to remove his assets from the reach of Huntington. For example, before Huntington commenced its collection against Schneider, Schneider reported owning 100% of 13 valuable limited liability companies and 85% of another valuable limited liability company. However, during the course of Huntington's collection action, Schneider transferred his interests so that he now only owns 1% of 11 of these entities.

3. There is an urgent need for the appointment of a receiver to prevent further fraudulent conveyances and further irreparable harm to Huntington's ability to collect on its judgment. The receiver will liquidate any remaining assets to pay down the judgment and commence fraudulent conveyance actions against the recipients of Schneider's assets.

4. Huntington respectfully requests that Plante & Moran PLLC ("Plante Moran") be appointed as receiver. Plante Moran has a strong background in liquidating assets in an efficient manner. Furthermore, Plante Moran has in depth experience with forensics and litigation to recover fraudulent conveyances. A copy of Plante Moran's credentials are attached as **Exhibit A**. Plante Moran is licensed in Ohio and has extensive operations and personnel in Ohio.

5. For the reasons discussed in more detail in the attached memorandum of law, Huntington respectfully requests that the Court appoint a receiver on an emergency basis. A copy of a proposed order is attached as **Exhibit B**.

2

Respectfully submitted,

Dated: December 19, 2022

**BUCHANAN INGERSOLL & ROONEY PC**

Attorneys for Plaintiff

By:   */s/ Christopher P. Schueller*
      Christopher P. Schueller (Ohio ID 0086170)
      Union Trust Building
      501 Grant Street, Suite 200
      Pittsburgh, PA 15219
      Tel: (412) 562-8800
      Christopher.schueller@bipc.com

3

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Emergency Motion of Plaintiff for the Appointment of a Receiver, Memorandum of Law in Support of Plaintiff's Emergency Motion for the Appointment of a Receiver, and Declaration in Support of Plaintiffs Emergency Motion for the Appointment of a Receiver were served pursuant to Civ. R. 5(B)(2)(f) by U.S. Mail and electronic mail upon the following on this date:

Richard S. Wayne, Esq.
Jeffrey A. Levine, Esq.
Ryan F. Hemmerle, Esq.
Strauss Troy Co., LPA
The Federal Reserve Building
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
rswayne@strausstroy.com
jalevine@strausstroy.com
rfhemmerle@strausstroy.com
*Counsel for Raymond Schneider*

Alan J. Statman, Esq.
William B. Fecher, Esq.
STATMAN, HARRIS & EYRICH, LLC
35 E. 7th Street, Suite 315
Cincinnati, OH 45202
ajstatman@statmanharris.com
wbfecher@statmanharris.com
*Counsel for Harold Sosna and Faye Sosna*

Respectfully submitted,

Dated: December 19, 2022

**BUCHANAN INGERSOLL & ROONEY PC**
Attorneys for Plaintiff

By: /s/ Christopher P. Schueller
Christopher P. Schueller (Ohio ID 0086170)
Timothy P. Palmer (Ohio ID 0086166)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
christopher.schueller@bipc.com
timothy.palmer@bipc.com

# EXHIBIT H

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **THE HUNTINGTON NATIONAL** | : | **Case No. A2002093** |
| **BANK** | : | |
| **Plaintiff,** | : | **Judge Megan Shanahan** |
| **v.** | : | |
| | : | **DEFENDANT'S MEMORANDUM IN** |
| **HAROLD SOSNA, et al.,** | : | **OPPOSITION TO THE APPOINTMENT** |
| **Defendants.** | : | **OF A RECEIVER** |

Defendant Raymond Schneider ("Defendant" or "Schneider"), by and through
counsel, summits his opposition to Huntington Bank's ("Plaintiff") Emergency Motion for
the Appointment of a Receiver. The appointment of a receiver is extraordinary relief that
is not warranted. Schneider's assets, as is well-known to Plaintiff, are maintained in
United States financial institutions and in business entities that are all located in the United
States. There is no risk of dissipation of Schneider's assets, and the relief sought in this
motion is not only contrary to well-established Ohio law, but also will be value-destructive.
For all the reasons stated below, Schneider respectfully requests that the court enter an
order overruling Huntington's Motion to Appoint a Receiver.

## ARGUMENT

### I.    Legal Standard

R.C. 2735.01 governs the appointment of a receiver. Pursuant to R.C. 2735.01(A),
the court of common pleas or a judge thereof, in his or her county, may appoint a receiver
in the following cases:

(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a
creditor to subject property or a fund to the creditor's claim, or between partners or
others jointly owning or interested in any property or fund, on the application of the
plaintiff, or of a party whose right to or interest in the property or fund, or the

proceeds of the property or fund, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;

(2) In an action by a mortgagee, for the foreclosure of the mortgagee's mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, materially injured, diminished in value, or squandered, or that the condition of the mortgage has not been performed, and either of the following applies:

(a) The property is probably insufficient to discharge the mortgage debt.

(b) The mortgagor has consented in writing to the appointment of a receiver.

(3) To enforce a contractual assignment of rents and leases;

(4) After judgment, to carry the judgment into effect;

(5) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;

(6) When a corporation, limited liability company, partnership, limited partnership, or other entity has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate, limited liability company, partnership, limited partnership, or other entity rights;

(7) In all other cases in which receivers have been appointed by the usages of equity.

The appointment of a receiver is an extraordinary remedy. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. Cuyahoga No. 102067, 2015-Ohio-2703, ¶ 8; *see also Hoiles v. Watkins*, 117 Ohio St. 165, 173, 5 Ohio Law Abs. 423, 157 N.E. 557 (1927). Because appointment of a receiver is "such an extraordinary remedy," the need for a receiver must be established by clear and convincing evidence. *Sobin v. Lim*, 2014-Ohio-4935, 21 N.E.3d 344, ¶ 14 (8th Dist.) ("The presentation of evidence to demonstrate that appointment is necessary is governed by a clear and convincing standard."), citing *2115-2121 Ontario Bldg., L.L.C. v. Anter*, 8th Dist. Cuyahoga No. 98627, 2013-Ohio-2995, ¶ 14; *see also Telecom Acquisition Corp.* at ¶ 8. The decision whether to appoint a receiver is within the trial court's sound discretion. *Sobin* at ¶ 14; *State ex rel.*

2

*Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73, 573 N.E.2d 62 (1991). In exercising that discretion, the trial court must generally consider all the circumstances and facts of the case, the conditions and grounds justifying relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter of the dispute and the adequacy and effectiveness of other remedies. *Telecom Acquisition Corp.* at ¶ 9; *Debartolo*, 8th Dist. Cuyahoga No. 96667, 2011-Ohio-6282, at ¶ 10; *Gibbs* at 73, fn. 3.

**II.  Huntington Already has Control of Schneider's Securities Account and Bank Accounts so the Appointment of a Receiver is a Redundant and Unnecessary Expense.**

In the present case, Huntington has requested an *emergency* appointment of receiver, which will add additional and unnecessary expense to the post-judgment collection process; however, there is no evidence before the Court in any affidavit demonstrating that Schneider's assets are in danger of being lost, removed, or materially injured, which is a requirement for the appointment of a receiver under R.C. 2735.01(1). Moreover, Schneider has voluntarily asked the Plaintiff to produce a list of all documents that they wish to receive from Schneider on his financial situation. That request was made on December 29, 2022. Plaintiff has indicated that it would send a document request, but has not done so yet. Huntington's action for money on Schneider's Guaranty itself does not constitute a "fund" as stated in R.C. 2735.01(A); thus, pursuant to R.C. 2735.01, the trial court has no authority to appoint a receiver. *ATAC Corp. v. Shetty*, 1997 Ohio App. LEXIS 511 (Ohio Ct. App., Cuyahoga County Feb. 13, 1997). Notwithstanding the foregoing, Schneider, a life-long resident of Cincinnati has already provided disclosure of his financial records and the location of his assets at the inception of the litigation, but as stated above, has voluntarily offered to provide updated information. In fact, the financial

3

documents appended to Huntington's Motion demonstrate that the value Schneider's marketable securities account, while subject to market influences, has remained in the exact same account during the pendency of this litigation. Moreover, Huntington has already initiated non-wage garnishment proceedings against Schneider's security account and bank accounts. Thus, Huntington already initiated action to secure control of Schneider's marketable securities and cash, and the appointment of a receiver to access these assets is inappropriate, and unfairly forces Schneider to incur additional and unnecessary administrative expenses.

### III. Huntington's Remedy in Relation to Schneider's Membership Interests is to Pursue a Charging Order as the Receiver Cannot Liquidate Schneider's Businesses to pay his Personal Judgment

Huntington's request to appoint a receiver on an emergency basis, pursuant to R.C. 2735.01 et seq., is based upon assertions that Schneider has transferred membership interests in his business entities, and on the bald allegations that he has engaged in "fraudulent conveyances" and other "tactics to remove his assets from the reach of Huntington"[1]. To be clear, Schneider has not done so.

Ohio courts have often reiterated the general rule that, because the appointment of a receiver is an extraordinary remedy, the party requesting a receivership "must show by clear and convincing evidence that the appointment of a receiver is necessary for the preservation of the complainant's rights." *Malloy v. Malloy Color Lab, Inc.* (1989), 63 Ohio App.3d 434, 437, 579 N.E.2d 248. See also *Parker; Equity Ctrs.; Tessler v. Ayer* (Oct. 25, 1995), 1st Dist. No. C-940574, 1995 Ohio App. LEXIS 4686; *Maines Paper & Food Serv.--Midwest, Inc. v. Regal Foods, Inc.* (Mar. 24, 1994), 8th Dist. No. 66262, 1994 Ohio App.

---

[1] Huntington's Motion to Appoint Receiver at ¶ 2.

4

LEXIS 1229. *Ohio Bur. of Workers' Comp. v. Am. Professional Emplr., Inc.*, 184 Ohio App.3d 156, 2009-Ohio-2991, 920 N.E.2d 148, ¶ 11 (10th Dist.)

Not only has Huntington failed to provide clear and convincing evidence for these alleged "fraudulent" conveyances", but it has also failed to demonstrate that the appointment of a receiver for Schneider's business entities is necessary to protect the collectible assets. Under R.C. 1706.342, Huntington may petition the court to charge the membership interest of Schneider with the payment of the unsatisfied amount of the judgment with interest—which it has already done—but it is not entitled to liquidate the business entities to satisfy the underlying judgment. *Firstmerit Bank, N.A. v. Washington Square Ents.*, 8th Dist. Cuyahoga No. 88798, 2007-Ohio-3920, ¶ 15. Limited liability companies are entities separate and distinct from their owners. A member's judgment creditors have only the rights of assignees of a membership interest. R.C. 1705.19. Assignees of membership interests do not become members themselves, but only have the right to receive distributions that would have been paid to the member-assignor. *Id* at ¶ 1; former R.C. 1705.18. Presumably Huntington is targeting the transfer of Schneider's membership interests; however, the appointment of a receiver is wholly inappropriate as Huntington's remedy is to move the court for the issuance of a Charging Order.

**IV. Any Receiver Must be Required to Post a Bond**

To the extent this Court chooses to ignore well-settled Ohio law and appoint a receiver, the Receiver must post a bond. The Receiver proposed by Huntington in this case appears to be a foreign limited liability company. Plante & Moran, LLC, a Michigan limited liability company, is not an individual, and there is no representation to this Court that this limited liability company owns any assets in Ohio. Furthermore, the bond should

5

be increased to a reasonable amount to protect Schneider in the event the Court should appoint the Receiver and there is any mismanagement on the part of the Receiver. Huntington has proposed that no bond is necessary; however, the extreme remedy of appointing a receiver, who is unfamiliar with Schneider's businesses, poses far too great a risk for there not to be a bond posted.

Schneider should only be responsible for reimbursement of properly incurred costs rather than blanket reimbursement of any costs, and under the circumstances the appointment of a Receiver will result in unnecessary expenses, especially since Huntington is aware of Schneider's assets and it has already initiated action to take control of Schneider's assets.

For the foregoing reasons, Schneider respectfully requests that the court enter an order denying Huntington's motion to appoint a Receiver.

Respectfully submitted,

*/s/ Ryan Hemmerle*
Ryan Hemmerle (0079721)
Richard S. Wayne (0022390)
Amy Hunt (0075312)
Jeffrey A. Levine (0095334)
STRAUSS TROY CO., LPA
150 East Fourth Street, 4th Floor
Cincinnati, Ohio 45202
T: (513) 621-2120/F: (513) 241-8259
E-mail: rswayne@strausstroy.com
E-mail: jalevine@strausstroy.com
E-mail: alhunt@strausstroy.com
E-mail: rfhemmerle@strausstroy.com
*Counsel for Defendant Raymond Schneider*

16142730.2

6

## PROOF OF SERVICE

I certify that a true and accurate copy of the foregoing was served pursuant to Civ.R. 5(B)(2)(f) by electronic mail upon the following this 3rd day of January, 2023:

Christopher P. Schueller (0086170)
BUCHANAN INGERSOLL & ROONEY PC
Christopher.schueller@bipc.com
*Counsel for Plaintiff The HNB National Bank*

And

William B. Fecher (0039240)
STATMAN, HARRIS & EYRICH, LLC
wbfecher@statmanharris.com
*Counsel for Defendant Harold Sosna*

*/s/ Ryan Hemmerle*
Ryan Hemmerle (0079721)

7

# EXHIBIT I

| | |
|---|---|
| **From:** | Christopher Schueller |
| **Sent:** | Tuesday, January 17, 2023 10:13 AM |
| **To:** | Bradford J. Sandler; rfhemmerle@strausstroy.com; Wayne, Richard S.; Peter J. Keane |
| **Subject:** | Schneider - Discovery Demands |
| **Attachments:** | A2002093 First Set of Interrogatories - Schneider (4883-0861-9851 v1).pdf; First Set of Interrogatories to Schneider (4889-2422-2537 v1).docx |

Attached for service are Huntington's discovery demands on Schneider.   Also, for your convenience attached are the demands in Word.

Chris

Christopher P. Schueller
Shareholder

One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
412 562 8432 (o)
724 991 3863 (c)
christopher.schueller@bipc.com

vCard | Bio | BIPC.com | Twitter | LinkedIn

Buchanan Ingersoll & Rooney PC
KNOW GREATER PARTNERSHIP

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

### Judge Megan Shanahan

### Case No. A2002093

THE HUNTINGTON NATIONAL BANK,

      Plaintiff,

vs.

HAROLD SOSNA, FAYE SOSNA, and
RAYMOND SCHNEIDER,

      Defendants.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RAYMOND SCHNEIDER

Plaintiff The Huntington National Bank ("**Huntington**") by its counsel, Buchanan Ingersoll & Rooney PC, pursuant to Ohio Rules of Civil Procedure 69, 33 and 34, propound the following interrogatories and requests for production of documents and things (collectively, the "**Requests**") on Defendant Raymond Schneider ("**Schneider**") and requests that responses thereto, and responsive documents thereto be produced for inspection and copying, at the offices of Buchanan Ingersoll & Rooney, 501 Grant Street, Suite 200, Pittsburgh, PA 15219, within twenty-eight (28) days of the date of service.

### DEFINITIONS

1.     "**2018 PFS**" means the personal financial statement dated as of January 31, 2018 which Schneider provided to Huntington.

2.     "**2019 PFS**" means the personal financial statement dated as of June 1, 2019 which Schneider provided to Huntington.

3. **"2021 PFS"** means the personal financial statement dated as of September 1, 2021 which Schneider provided Huntington.

4. **"Judgment"** means the judgment entered in favor of Huntington in the above-captioned case in the Court of Common Pleas of Hamilton County, Ohio.

5. **"Communication"** means any disclosure, transfer or exchange of information, by any means, and whether orally or by document, or whether face-to-face, by telephone, mail, electronic mail, text message, or personal delivery.

6. **"Schneider"** means Raymond Schneider, and his agents, representatives, attorneys and all other persons acting or purporting to act on his behalf.

7. **"Family Member"** means any person related to Schneider by marriage or blood and any trust (revocable or otherwise) in which a person related to Schneider by marriage or blood is a beneficiary.

8. **"Document"** shall include, without limitation, all written, typewritten, handwritten, recorded or printed matter of any kind, including, without limitation, the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made upon such copies or otherwise, including, again without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries of negotiations, account books, orders, invoices, statements, bills, checks, accounting records, vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intra-office communications, offers, notations of any sort of conversations, appointment books or calendars, teletypes, telefax,

thermafax, confirmations, computer files, printouts of computer files, computer data (including, but not limited to, information or programs stored in a computer, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records, motion pictures, and electronic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, magnetic cards, and recordings; emails, text messages and all other similar material.

9.     **"All documents"** shall mean every document, whether an original or copy, as defined herein, known to you, and every such document of which you have knowledge, or which you can locate or discover by reasonable diligent efforts.

10.     **"Each"** shall mean each and every.

11.     **"Or"** shall mean and/or.

12.     **"Entity"** shall mean any and all entities, as well as natural persons, and, without limitation, shall be defined to include natural persons, corporations, limited liability companies, limited liability partnerships, sole proprietorships, partnerships, joint owners, associations, companies, governmental bodies or agencies and joint ventures.

13.     **"State the Basis"** with respect to any given allegation or proposition means to identify: (a) each person who has or purports to have knowledge of the facts underlying the allegation or proposition; (b) each document used or relied upon to formulate, or which supports or substantiates, the allegation or proposition; and (c) the rationale and each fact supporting the allegation or propositions.

3

14. **"Refer," "relate," "reflect," "regard," "refer to," "relate to," "relating to,"** and **"concerning"** (or forms thereof) shall mean directly or indirectly (in whole or in part) referring to, relating to, connected with, commenting on, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, evaluating, recording, noting, analyzing, reflecting, or constituting.

15. **"You"** or **"your"** refer to defendant Schneider, and his agents, representatives, attorneys and all other persons acting or purporting to act on his behalf.

16. **"Trust"** means any trust into which Schneider has transferred any of his assets or in which Schneider is Trustee.

17. **"Wife"** means Schneider's current wife, if any.

18. **"Identify"** and **"identification"** shall mean, when used in reference to:

   (a) A natural person: his or her full name; home address; business address; home and business telephone number; present or last known position, job description, and the identity of his or her business affiliation; his or her position, job description, and the identity of his or her business affiliation at the time and in the context in which he or she is identified; and the relationship, business or otherwise, between such person and yourself.

   (b) A company, corporation, association, partnership, or legal entity other than a natural person: its full name; a description of the type of organization or entity; the address and telephone number of its principal place of business; the jurisdiction of incorporation or organization; the date of its incorporation or organization; and the identity of each natural person acting on behalf of the entity at the time and in the context in which the entity is identified.

   (c) A document: its description (i.e., letter, memorandum, report, etc.); its title; its date; the number of pages thereof; its subject matter; the identity of its author(s), creator(s), originator(s), signer(s), and any person(s) who participated in its preparation; the identity of its addressee(s) or recipient(s); the identity of each person to whom copies were sent and each person by whom copies were received; its present location; and the identity of its custodian(s). If any such document was but is no longer in your possession or control, state what disposition was made of it and when.

4

(d)    A communication: the type and/or mode of the communication; the date and time when it occurred; the place where it occurred; the complete substance of the communication; the identity of each person to whom such communication was made, by whom such communication was made, and who was present when such communication was made; and the identity of all documents memorializing, referring, or relating in any way to the communication or its subject matter.

(e)    An assertion action: the date and time when it occurred; the place where it occurred; a detailed description of the action; the identity of each person taking and/or witnessing such action; and the identity of all documents memorializing, referring, or relating in any way to the subject matter of the action.

## INSTRUCTIONS

A.    If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not answering a Request or any part of a Request, set forth all facts upon which such claim of privilege is based and all other non-privileged information responsive to the Request.

B.    If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying or disclosing the contents of documents in response to a Request, set forth all facts upon which such claim of privilege is based, and for each document as to which you claim any form of privilege, set forth (i) the date of the document, (ii) the date upon which the document was prepared, (iii) the title or caption of the document, (iv) the form of the document (e.g. letter, memorandum, chart, etc.), (v) the subject matter of the document, (vi) the author(s) and/or any and all other persons involved or participating in preparing or drafting the document, (vii) the recipient(s) of the document or any copy thereof, including all persons to whom the document has been provided or who have it within their possession, custody or control, and (viii) all non-privileged information concerning the document which is responsive to the Request.

C.    If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying requested oral communications in response to any Request, set forth all facts upon which such claim of privilege is based, and for each oral communication as to which

5

you claim any form of privilege, set forth (i) the date upon which the oral communication took place, (ii) the subject matter of the oral communication, (iii) the person who made the oral communication, (iv) the identity of all persons to whom the oral communication was made or who have knowledge of the contents of the oral communication, and (v) all non-privileged information concerning the oral communication which is responsive to the Request.

D.     If any document responsive to any Request has been destroyed, set forth (i) the identity of all persons who participated in, or who were involved in, the decision to destroy such document, (ii) any document retention or destruction policy under which such document was destroyed and any and all persons who participated in, or who were involved in, the formulation of any such policy, (iii) the reason for the destruction of such document, and (iv) the date (or approximate date if precise date is not known) of the destruction of such document.

E.     Whenever a date, amount or other computation or figure is requested by a Request, the exact date, amount or other computation or figure is to be given, unless it is not known. If the exact date, amount or other computation or figure is not known, the approximate date, amount, or other computation or figure should be given or the best estimate thereof and the answer should state that the date, amount, or other computation or figure provided is an estimate or approximation.

F.     Where facts are set forth in the answer to a Request or a portion thereof, and are supplied upon information and belief, rather than your direct personal knowledge, you should so state, and specifically identify each source of such information and belief. Should you not be able to answer any Request, or any portion thereof, by either actual knowledge or upon information or belief, you should so state. Whenever a full and complete answer to any Request or any subpart

6

thereof is contained in a document identified as answering a specific numbered Request or subpart thereof, the document may be supplied in lieu of a written answer.

G.      Whenever a Request calls for information which is not available to you in the form requested, but is available in another form or can be obtained at least in part from other sources in your possession or control, so state and either supply the information requested in the form in which it is available, or supply the sources from which the information can be obtained.

H.      If a precise value, amount, or date cannot be supplied in response to a Request, an approximate value, amount, or date should be provided along with an explanation of how that approximation was determined.

I.      Unless otherwise stated, the relevant time period for these Requests shall be from January 1, 2018 through the present.

J.      These responses are continuing in nature and when new knowledge or information comes to your attention, responses shall be supplemented forthwith.

## INTERROGATORIES

1.    Identify the person(s) responding to these Requests, including all persons who were consulted or who assisted in preparing answers to these Requests, identifying which questions each person answered or assisted in answering.

**RESPONSE**:


2.    Identify all Entities (including without limitation those Entities listed in the attached **Exhibit A**) in which Schneider directly or indirectly has held any type of an ownership interest from January 1, 2018 through the present and state (a) the state of formation of each Entity; (b) the nature of the business of each Entity, (c) the nature of the ownership interest Schneider and/or a Family Member and/or a Trust has or had in each such Entity, and (d) the period of time Schneider and/or the Family Member and/or a Trust has held the ownership interest. Identify all corporate organizational documents for each Entity identified herein including without limitation by-laws, membership agreements, shareholder agreements, partnership agreements and any other similar document as well as any document which addresses the rights and restrictions concerning the transferability of such ownership interests. Furthermore, identify (i) all federal and state tax returns of each of these Entities from January 1, 2018 through the present, (ii) all financial statements (income statements and balance sheets) of each Entity from January 1, 2018 through the present, and (iii) if the Entity owns real estate, the most recent appraisal of that real estate.

**RESPONSE**:

3.  Identify all persons, management teams, controllers, chief financial officers, bookkeepers, accounting firms and accountants who have prepared personal financial statements, tax returns and financial statements for (a) Schneider, (b) a Trust, and/or any Entity in which Schneider directly or indirectly has held an ownership interest, from January 1, 2018 through the present. For the avoidance of doubt, this request encompasses all persons (i) directly employed by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest, or (ii) any third-party vendor used by Schneider and/or a Trust and/or any Entity in which Schneider has held an ownership interest.

**RESPONSE**:


4.  For all the Entities identified in response to Interrogatory 2 above, state (a) whether any part of Schneider's and/or a Trust and/or a Family Members' ownership interest in an Entity was transferred between January 1, 2018 and the present, (b) the date of the transfer, (c) the recipient of the transferred ownership interest, and (d) the terms of the transfer including without limitation the consideration received by Schneider and/or a Trust and/or Family Member. Identify all documents which refer to the transfer including without limitation all written agreements containing the terms of the transfer.

**RESPONSE**:


5.  For all the Entities identified in response to Interrogatory 2 above, state whether Schneider and/or a Trust and/or a Family Member has received any income or other assets from

that Entity from January 1, 2018 through the present including without limitation any salary, distributions, dividends or other payments of cash, personal property or real estate, and state (a) the date of the transfer or payment[1], (b) the amount paid or transferred, or as applicable the property transferred as well as the value of the property transferred, (c) the recipient of the payment or transfer, and (d) the terms of the transfer. Identify all documents which refer to the transfer or payment including without limitation all written agreements containing the terms of the payment or transfer as well as all documents used to report the transfer or payment to the IRS (i.e., W-2, or 1099 form, etc.).

**RESPONSE:**

6.   For all Entities identified in Interrogatory 2 above, state each Entity which obtained financing of any type from January 1, 2018 through the present and state (a) the lender; (b) the date of the financing, (c) the terms of the financing, (d) whether Schneider was a personal guarantor, (e) the uses of the refinancing proceeds including whether Schneider and/or a Trust and/or a Family Member received any of the proceeds from the financing. Identify all documents which refer to the financings identified herein including without limitation (i) all loan documents (including without limitation all UCC financing statements and security agreements) and closing statements, (ii) documents containing any financial disclosures made by Schneider personally including without limitation any personal financial statements.

**RESPONSE:**

---

[1] If there are numerous transfers of cash in any given year, the response may be set forth in the aggregate on an annual basis.

7.     Identify all real estate owned in whole or in part personally by Schneider and/or a Trust from January 1, 2018 through the present and state the address of the real estate and further state (a) whether the real estate was sold or transferred during this period of time, (b) the date of the sale or transfer, (c) the buyer or recipient of the real property, (d) the terms of the sale or transfer including the consideration received by Schneider and/or the Trust and/or any Family Member, (e) whether the real estate is collateral for any loan and if so the name of the lender and the current amount of the loan. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate including without limitation all written agreements containing the terms of the sale or transfer.   .

**RESPONSE**:

8.     Identify all real estate owned in whole or in part by an Entity in which Schneider held an ownership interest from January 1, 2018 through the present and state (a) whether the real estate was sold or transferred during this period of time, (b) the date of the sale or transfer, (c) the buyer or recipient of the real property, (d) the terms of the sale or transfer including the consideration received by Schneider and/or a Trust and/or any Family Member, (e) whether the real estate is collateral for any loan and if so the name of the lender and the current amount of the loan, and (f) whether the real estate taxes are current, and if not current, the amount and age of the delinquency. Identify all appraisals for this real estate and all documents which refer to the sale or transfer of this real estate including without limitation all written agreements containing the terms of the sale or transfer.

11

**RESPONSE:**

9.     Identify all deposit accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present and for each state (a) the name of the depository institution, (b) the dates the deposit accounts were open, (c) the account numbers, (d) the current balances in each account. Identify the most recent statement for each account which is currently open.

**RESPONSE:**

10.     Identify all safe deposit accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present and for each state (a) the name of the depository institution, (b) the dates the deposit box accounts were open, (c) the account numbers, (d) the contents of the boxes.

**RESPONSE:**

11.     Identify all stocks, bonds, precious metals, and crypto currency owned by Schneider and/or a Trust and state (a) an itemized accounting of all such assets, (b) the physical location of those assets or the accounts where those assets are held.

**RESPONSE:**

12

12.     Identify all marketable securities accounts maintained by Schneider and/or a Trust from January 1, 2018 through the present and for each state (a) the name of the institution maintaining the securities account, (b) the dates the accounts were open, (c) the account numbers, (d) the current balances in each account, (e) the amount of any loan secured by the marketable securities as well as the name of the lender and the current balance of the loan. Identify the most recent statement for each marketable securities account which is currently open and the most recent loan statement.

**RESPONSE:**


13.     Identify all personal property including without limitation household goods, motor vehicles, boats, planes, motorcycles, artwork and jewelry of Schneider and/or a Trust not otherwise described in any other interrogatory response which has a current marketable value or initial purchase price greater than $10,000 and state (a) the type, make, model and/or serial or identification number for the personal property, and (b) the physical location of this property.

**RESPONSE:**


14.     Identify who prepared the 2018 PFS, 2019 PFS and 2021 PFS and further identify all documents relied upon by that person in the preparation of these personal financial statements.

**RESPONSE:**

15.     State all Entities in which Schneider and/or a Trust directly or indirectly has owned an ownership interest from January 1, 2018 through the present where that Entity sold or transferred more than 10% of its assets in the aggregate or in a series of transactions from January 1, 2018 through the present and, for all such sales or transfers state (a) the buyer or transferee; (b) the terms of sale or transfer including without limitation a description of the assets sold or transferred, (c) the consideration received from the sale or transfer, (d) the direct and indirect recipients of the consideration from the sale or transfer. Identify all documents which refer to any sale or transfer identified above including without limitation all written agreements containing the terms of the sale or transfer.

**RESPONSE**:


16.     Identify any Trust into which Schneider has transferred any of his assets from January 1, 2018 through the present and state (a) the name of the Trust and whether it is a revocable or irrevocable Trust, (b) the assets currently held by that Trust, (c) the source of funds/assets paid into the Trust, (d) the beneficiaries of the Trust, and (e) where the Trust maintains any deposit or marketable securities accounts. Identify all Trust (i) formation and governing documents, (ii) Trust tax returns from January 1, 2018 through the present, (iii) Trust financial statements from January 1, 2018 through the present, and (iv) a list of all assets currently in each Trust.

**RESPONSE**:

17.     Identify any assets which Schneider has sold or transferred to his Wife or another Family Member from January 1, 2018 through the present and state (a) the date of the sale or transfer, (b) a detailed description of the assets sold or transferred, (c) the buyer or recipient, (d) the terms of the sale or transfer including the consideration received by Schneider and/or the Trust and/or any Family Member. Identify all documents which refer or relate to the sales or transfers.

**RESPONSE**:


18.     Identify any agreements (written or otherwise) between (a) Schneider and an Entity, (b) a Trust and Schneider, (c) a Trust and an Entity, and (d) Schneider and a Family Member, including without limitation any agreement to transfer assets to Schneider in the future, and state the terms of the agreement. Identify all documents which refer or relate to such an agreement.

**RESPONSE**:


19.     State the legal name of each entity referenced in Schedule B of the 2018 PFS, 2019 PFS and 2021 PFS.

**RESPONSE**:


20.     State the basis for the change in Schneider's personal net worth between the 2019 PFS and 2021 PFS and identify (a) all transactions which caused the change in Schneider's net worth, and (ii) all documents which refer or relate to these transactions.

15

**RESPONSE**:

21.     Complete the personal financial statement attached as **Exhibit B**.

**RESPONSE**:

22.     State the basis for the change in Schneider's personal net worth between the 2021 PFS and the present and identify (a) all transactions which caused a change in Schneider's net worth, and (ii) all documents which refer or relate to these transactions.

**RESPONSE**:

23.     State the name and address of Schneider's Wife and any of Schneider's siblings and children.

**RESPONSE**:

24.     Identify if any of the Entities identified in Interrogatory 2 are currently marketing for sale, or are under agreement to sell or transfer, any assets and state (a) the expected date of the sale or transfer, (b) the assets to be sold or transferred, (c) the expected gross proceeds from the sale or transfer, and (d) whether there are any liens which need to be paid out of the sale or transfer proceeds, and (e) the amount of the liens to be paid and the lienors out of the sale or transfer.

16

Identify all documents which refer or relate to these sales or transfers including without limitation all listing and sale agreements.

**RESPONSE:**

25.     Identify all notes/obligations receivable and notes/obligations payable of Schneider and/or a Trust and state (a) the amount of the debt, (b) the parties to the notes/obligations receivable or payable, and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.

**RESPONSE:**

26.     Identify all notes/obligations receivable and notes/obligations payable between a Family Member and an Entity identified in the responses to Interrogatory 2 and state (a) the amount of the debt, (b) the parties to the notes/obligations receivable or payable, and (c) the terms of repayment. Identify all documents which refer or relate to the notes/obligations receivable and payable.

**RESPONSE:**

27.     Identify all life insurance policies which insure Schneider's life and the names and addresses of all beneficiaries and whether the policies have been pledged as collateral to any other creditor. Identify all documents which refer or relate to these life insurance policies and pledges.

**RESPONSE**:


28.     State whether Schneider intends to pay off the Judgment and if so the source of funds he intends to use.

**RESPONSE**:


29.     For each of the Entities identified in response to Interrogatory 2 and any Trust, identify the (i) accounting system and payroll provider used by each Entity/Trust, (ii) corporate credit card account information for each Entity or Trust including the issuer of the card and the current balance owed, (iii) the manager or trustee of each Entity or Trust.

**RESPONSE**:


## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Produce copies of all documents identified in the responses to interrogatories.

2.     Produce copies of all of Schneider's federal and state income tax returns from 2018 through the present.

3.     Produce copies of all personal financial statements Schneider has provided any lender from January 1, 2018 through the present.

4.   Produce organizational charts for the ownership of the Entities identified in response to Interrogatory 2.

Respectfully submitted,

Dated: January 17, 2023

**BUCHANAN INGERSOLL & ROONEY PC**

Attorneys for Plaintiff

By:   */s/ Christopher P. Schueller*
Christopher P. Schueller (Ohio ID 0086170)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041
christopher.schueller@bipc.com

4889-2422-2537, v. 1

# EXHIBIT A

| Bates# | Business Name | Title | Office Date | Source | FCS | Notes |
|---|---|---|---|---|---|---|
| | TCI LIFE, LTD. | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Motion | Active | |
| | THE GREEN BRIER HEALTH CARE CENTER LTD | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Motion | Active | |
| | STERLING HEALTH & HEALTH SYSTEM LTD | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Motion | Active | |
| | 73 BROOKLINE, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | DANA NATIONAL, LTD. | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | RPL LTD. | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | SOFT PACKAGING EQUIPMENT, INC. | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Motion | Active | |
| | MADISON WAREHOUSE, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | AVON HEALTH, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | WEST CHESTER PET RESORT & SPA, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | JOLLY HOLDINGS LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | MINNESOTA CARE LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | THE RIZ AT MADISON CIRCLE LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | THE RIZ SYSTEMS, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | PERSONAL HEALTH CARE OPERATING CO., LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | CIRCLE HEALTH CARE OPERATING CO., LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | CIRCLE HEALTH CARE OPERATING CO. VI, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | CIRCLE HEALTH CARE OPERATING CO. V, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | CIRCLE HEALTH CARE REAL ESTATE ACQUISITION CO., LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | LOBATON OIL, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | RED ZONE OPERATIONS HOLDING COMPANY LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | TECHNOLOGY CIRCLE 361, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | 8617 HAVERFORD ROAD DEVELOPMENT, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | R&T DEVELOPMENT | CORPORATION FOR PROFIT | | Exhibit E of Emergency Notice | Active | |
| | RED ZONE OPERATIONS CO., LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | CIRCLE HEALTH CARE OPERATING CO. II, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | CIRCLE HEALTH CARE OPERATING CO. III, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | CIRCLE HEALTH CARE OPERATING CO. IV, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | Exhibit E of Emergency Notice | Active | |
| | SOUTHGATE SELF STORAGE, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Inventory of Data | Active | |
| | BOSTON ANIMAL HOSPITAL, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Inventory of Data | Active | |
| | WEST CHESTER PET RESORT & SPA, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Inventory of Data | Active | Brendan Doherty Registered Agent |
| | AVON DATA, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Active | |
| | BOSTON ANIMAL HOSPITAL, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Active | |
| | FRONTCREEK PET RESORT & SPA, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Active | |
| | PARAMOUNT HOLDINGS, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Dissolved | |
| | NEW ENGLAND SELF STORAGE, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Active | Joseph Schneider Registered Agent |
| | WEST CHESTER PET RESORT & SPA, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Active | |
| | NORTH SHORE RED DOG PET RESORT & SPA, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Active | |
| | SOUTHGATE SELF STORAGE, LLC | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Data Secretary of State | Active | |
| | STERLING HEALTH MANAGEMENT COMPANY, LLC | DOMESTIC PROFIT CORPORATION | | CLEAN/Main Secretary of State | Active | |
| | CIRCLE AND NETWORK | DOMESTIC LIMITED LIABILITY COMPANY | | CLEAN/Main Secretary of State | Active | |
| | PLEASANT RIDGE CARE CENTER, INC. | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | PLEASANT RIDGE CARE CENTER, INC. | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | SOUTHBROOK HEALTH CARE CENTER, INC. | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | REGENCY CARE CENTER, INC. | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | IVY HEALTH CARE, LLC | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | PLEASANT RIDGE REALTY LLC | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | PLEASANT RIDGE REALTY LLC | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | IVY HEALTH REALTY LLC | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | STENGLE ROAD REALTY LLC | CORPORATION FOR PROFIT | | Weisfeld Summary Judgement | Held | |
| | CIRCLE DEVELOPMENT OF GEORGETOWN, LLC | CORPORATION FOR PROFIT | | Restated Scheduler Asset Report | Active | |
| | HARMONY HEALTH CARE, INC. | CORPORATION FOR PROFIT | | Amended Asset Report | Dead | Benjamin Scheduler Registered Agent |

# EXHIBIT B



**Huntington**

## PERSONAL FINANCIAL STATEMENT

| Applicant | Spouse |
|---|---|

| Address |
|---|

| City, State | Zip |
|---|---|

| Occupation | S.S. # |
|---|---|

| Date of Birth | Home Telephone | Business Telephone |
|---|---|---|

I am providing this Personal Financial Statement to the Huntington banking or lending office where application is being made ("Huntington") in connection with:
☐ My application to Huntington for an extension of credit or other business relationship.

☐ The application of _____ to Huntington for an extension of credit or other business relationship, for which I am willing to be a cosigner or guarantor.

☐ The application of _____, of which I am a principal owner, partner, executive officer, or director, to Huntington for an extension of credit or other business relationship with Huntington.

☐ Review by Huntington of an extension of credit made by Huntington to me or to another person or entity of which I am a principal owner, partner, executive officer, or director or for which I have cosigned or guaranteed the credit or a review by the Huntington of any other business relationship I or any entity of which I am a principal owner, partner, executive officer, or director have with Huntington.

**CONDITION AS OF** _____ (Date)

Leave no blanks. Insert "0" or word "NONE" where necessary to complete information

| ASSETS | $000's | | | LIABILITIES | $000's | | |
|---|---|---|---|---|---|---|---|
| | Applicant | Spouse | Joint | | Applicant | Spouse | Joint |
| Cash on hand and on Deposit (Schedule 1) | $ | $ | $ | Notes Payable | | | |
| U.S. Government Obligations | | | | Secured by Real Estate (Schedule 5) | $ | $ | $ |
| Other Investments (Schedule 2) | | | | Secured by Other than R.E. (Schedule 6) | | | |
| IRA and/or Keogh Plans | | | | Unsecured (Schedule 6) | | | |
| Notes Receivable: | | | | Contract Accounts Unpaid (Schedule 7) | | | |
| Secured by Real Estate (Schedule 3) | | | | Open Accounts Unpaid (Schedule 7) | | | |
| Secured by Other Collateral (Schedule 3) | | | | Current & Unpaid R.E. Taxes | | | |
| Unsecured (Schedule 3) | | | | Delinquent & Unpaid Interest | | | |
| Accounts Receivable (Schedule 3) | | | | Current Year Federal Taxes | | | |
| Life Insurance–Cash Value (Schedule 4) | | | | Any Other Indebtedness–Itemize | | | |
| Real Estate–Appraised Value (Schedule 5) | | | | | | | |
| Farm Implements or Machinery | | | | | | | |
| Autos    Make    Year | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Any other Property or Investments–Itemize | | | | TOTAL LIABILITIES | $ | $ | $ |
| (Market) | | | | NET WORTH | $ | $ | $ |
| **TOTAL ASSETS** | $ | $ | $ | **TOTAL LIABILITIES AND NET WORTH** | $ | $ | $ |

**Contingent Liabilities**

| | | |
|---|---|---|
| Liability as Guarantor or Cosigner for accounts and Loans of others | | $ |
| Liability for Leases | | |
| Liability other than above–Itemize | | |
| **TOTAL CONTINGENT LIABILITIES** | | $ |

| ANNUAL INCOME | | | | ANNUAL EXPENDITURES (exc. Ordinary living expenses) | | | |
|---|---|---|---|---|---|---|---|
| | Applicant | Spouse | Joint | | Applicant | Spouse | Joint |
| Salary, Wages, Commissions | $ | $ | $ | Mortgage or Rent | $ | $ | $ |
| Income from Business | | | | Income Taxes | | | |
| Rents and Royalties | | | | Insurance Premiums | | | |
| Income from Investments | | | | Property Taxes | | | |
| Alimony, child support or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this loan. | | | | Alimony, child support or separate maintenance. | | | |
| Other Income–Itemize | | | | Other–Itemize (include installment payments) | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **TOTAL INCOME** | $ | $ | $ | **TOTAL EXPENSES** | $ | $ | $ |

DETAILS RELATIVE TO ASSETS AND LIABILITIES (If space is insufficient, attach supplemental list.)

### SCHEDULE 1 – Cash on Deposit

| Name of Depository | Type | Amount | Name of Depository | Type | Amount |
|---|---|---|---|---|---|
| | | $ | | | $ |
| | | | | | |
| | | | | | |

### SCHEDULE 2 – Other Investments-Stocks and Bonds

| Description | Preferred/ Common | Number Shares | Book Value | Market Value | Listed on Exchange | # Shares Pledged | Where Pledged |
|---|---|---|---|---|---|---|---|
| | | | $ | $ | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### SCHEDULE 3 – Notes and Accounts Receivable – Secured and Unsecured

| Maker | Cosigner or Guarantor | Maturity | Rate | Interest Paid to Date | Face Amount | Balance Due | List Security If Secured |
|---|---|---|---|---|---|---|---|
| | | | % | $ | $ | $ | |
| | | | % | | | | |
| | | | % | | | | |

### SCHEDULE 4 – Life Insurance

| Issuing Company | Beneficiary Name and Relationship | Kind of Insurance | Face Amount | Present Cash Value | Amount of Policy Loan | Annual Premium |
|---|---|---|---|---|---|---|
| | | | $ | $ | $ | $ |
| | | | | | | |
| | | | | | | |

### SCHEDULE 5 – Real Estate

| Description & Location | Title In Whose Name | Purchase Amount | Date | Appraisal Value | Date | Mortgage Indebtedness | Monthly Pmt. |
|---|---|---|---|---|---|---|---|
| | | $ | | $ | | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

By Whom Appraised? _____ When? _____

### SCHEDULE 6 – Notes Payable "Unsecured and with Security other than Real Estate"

| Owed To | Balance | Date | When Due | Interest Rate | Secured, Cosigned or Guaranteed By |
|---|---|---|---|---|---|
| | $ | | | % | |
| | | | | % | |
| | | | | % | |
| | | | | % | |
| | | | | % | |

### SCHEDULE 7 – Contracts and Open Accounts Unpaid

| Owed To | Amount | When Contracted | When Due | For What |
|---|---|---|---|---|
| | $ | | | |
| | | | | |
| | | | | |

### OTHER INFORMATION

If no provision has been made for payment of Federal taxes for current year, state estimated amount.  $ _____

Are you a partner/owner in any firm? ☐ Yes ☐ No  If so, supply name(s) and interest.

Are there any judgments unsatisfied or suits pending against you and for what amount? ☐ Yes ☐ No  $ _____

Have you ever declared bankruptcy? ☐ Yes ☐ No  If so, when? _____

Do you have a will? ☐ Yes ☐ No

Are you obligated on any leases not included in Liabilities above? ☐ Yes ☐ No
Give details.

Are any of the assets listed on this financial statement controlled by a Trust? ☐ Yes ☐ No
If so, please note which ones:

Are there any of your assets, other than those indicated in the schedules, pledged or hypothecated in any way? ☐ Yes ☐ No

Are any liabilities, other than those indicated in the schedules, secured, cosigned or guaranteed? ☐ Yes ☐ No

I have carefully read the information contained in this Statement and am providing this Statement to Huntington for the purpose of inducing Huntington to extend or continue credit or other business relationship from time to time in whatever form. I hereby certify that this Statement is a true and correct exhibit of my financial condition and may be treated by Huntington as a continuing statement thereof until replaced by a new statement or until I specifically notify Huntington in writing of any changes therein. In consideration of any such credit or other business relationship, I agree if at any time this Statement shall prove incorrect or misleading, in Huntington's judgement, as a statement of my then condition, or if at any time by reason of insolvency, application for receiver, or any act or omission on my part, such credit or other obligation is, in Huntington's judgement, prejudiced or impaired, all or any of my obligations to Huntington, whether direct, indirect, contingent or fixed, shall stand immediately due and payable without demand upon or notice to me. I hereby authorize Huntington to obtain a consumer report or reports to be used in connection with this Statement or the credit or other business relationship to which it relates and to obtain and exchange credit information from and with other credit grantors and consumer reporting agencies. I authorize Huntington to retain all information and reports for its files.

If this Statement is given in connection with credit in Ohio, the following disclosure applies:

The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

Signature: _____  Date: _____

Signature: _____  Date: _____

**EXHIBIT J**

# RAY SCHNEIDER ESATE PLANNING ANALYSIS

**TO LIFE LTD**

Original ownership:

| | |
|---|---|
| Ray | 80% |
| Patti | 5% |
| Justin | 5% |
| Danielle | 5% |
| Eric | 5% |

Ownership as of 12/31/20

| | | |
|---|---|---|
| Ray | 8.42% | |
| Danielle | 5.26% | |
| Justin | 5.26% | |
| Eric | 5.26% | |
| Ray Gift | trust | 75.80% |

**Value 12/19/20**          **$ 9,957,848**

**RED DOG OPERATIONS HOLDING COMPANY LLC**

Original ownership:

| | |
|---|---|
| Ray | 80% |
| Eric | 20% |

Ownership as of 12/31/20

| | |
|---|---|
| Ray | 0.01% |
| Eric | 30% |
| Patricia Gift Trust | 69.99% |

**Value 12/19/20**          **$ 3,715,559**

## GRASSHOPPER INVETMENTS, LLC

Original ownership:

Ray            100%

Ownership as of 12/31/20

| | |
|---|---|
| Ray | 0.50% |
| Schneider- | 0.50% |
| Grasshopper, Inc | |
| Patricia Gift Trust | 99% |

**Value 12/19/20**            **$ 2,366,897**

# EXHIBIT K

# RAYMOND SCHNEIDER
## Asset Analysis

3515 Tiffany Ridge Lane                     Value  $ 710,000
Cincinnati, Ohio 45241

       1st Mtg.— Mr. Cooper        $ 320,000

       Costs                               $ 70,000

                                $ 390,000

                          Equity              $ 320,000
                          Exemption       $ 161,375

                                  **Equity**      **$ 158,625**

2409 Chamonix Road                     Value  $ 1,500,000
Vail CO 81657

       1st Mtg- Trusist              $ 365,000

       Costs                               $ 150,000

                                  $ 515,000

                                  **Equity**      **$ 985,000**

2 Fort Lane                                    Value  $ 2,700,000
Kennebunk ME 04043

       1st Mtg- First Merchant       $ 2,200,000

       Costs                               $ 200,000

                                $ 2,400,000

                                  **Equity**      **$ 300,000**

2021 VW Kitcar                             Value  $ 35,000

                                  **Equity**      **$ 35,000**

| Merrill Roth IRA | | Value | $ 483,106 | |
|---|---|---|---|---|
| | | Exemption | 100% | |
| | | | **Equity** | **$ 0** |

| Merrill Brokerage | | Value | $ | 137,034 | |
|---|---|---|---|---|---|
| Merrill Brokerage | | Value | $ | 1,502,599 | |
| Merrill Brokerage | | Value | $ | 21,390,170 | |
| Merrill Brokerage | | Value | $ | 2,712,004 | |
| | Total | | | $ 25,741,807 | |
| | Margin | | | $ 17,084,286 | |
| | Net | | $ | 8,657,521 | |
| | Gain (Basis $ 10M) | | ($ | 4,700,000) | |
| | | | **Equity** | | **$ 3,957,520** |

| 54 Realty, LTD | **Equity** | **$ 0** |
|---|---|---|
| 72 Ventures, LTD | **Equity** | **$ 0** |
| 82 Lafayette Road LLC | **Equity** | **$ 0** |
| 747 LLC | **Equity** | **$ 117,500** |
| 5150 E Galbraith Rd LLC | **Equity** | **$ 0** |
| 9617 Kenwood Road Development, LLC | **Equity** | **$ 0** |
| Boston Rd LLC | **Equity** | **$ 1,139,319** |
| Boston Self Storage LLC | **Equity** | **$ 0** |
| Circle Development of Cincinnati, LLC | **Equity** | **$ 0** |
| Circle Health Care Operating Co. I, LLC | **Equity** | **$ 0** |
| Circle Health Care Operating Co. II, LLC | **Equity** | **$ 0** |
| Circle Health Care Operating Co. III, LLC | **Equity** | **$ 0** |
| Circle Health Care Operating Co. IV, LLC | **Equity** | **$ 0** |
| Circle Health Care Operating Co. V, LLC | **Equity** | **$ 0** |

| | | |
|---|---|---|
| Circle Health Care Operating Co. VI, LLC | **Equity** | **$ 0** |
| Corporate Park Investors, Ltd. | **Equity** | **$ 0** |
| Dana Ventures LTD | **Equity** | **$ 0** |
| Delhi Plaza Associates, Ltd. | **Equity** | **$ 0** |
| East Galbraith Health Care Center, Inc. | **Equity** | **$ 0** |
| EGHC Holdings | **Equity** | **$ 0** |
| Executive Park Investors, Ltd. | **Equity** | **$ 0** |
| Framingham RD LLC | **Equity** | **$ 0** |
| Framingham Red Dog | **Equity** | **$ 0** |
| Grasshopper Investments, LLC<br>(0.5% owner)<br>Owns Circle Storage Operating Co. I | **Equity** | **$ 11,834** |
| Grasshopper Investments II, LLC | **Equity** | **$ 585,000** |
| Hamilton II, LLC | **Equity** | **$ 11,400** |
| Harmony Health Care, Inc. | **Equity** | **$ 0** |
| Horizon Health Management LLC | **Equity** | **$ 0** |
| Horizon Health Management II, LLC | **Equity** | **$ 0** |
| HRM Realty Holding Co LTD | **Equity** | **$ 46,200** |
| Hyde Park Circle LLC | **Equity** | **$ 825,000** |
| JDE Holdings LLC | **Equity** | **$ 0** |
| Keller Road Realty Co., LLC | **Equity** | **$ 0** |
| Lebanon RD | **Equity** | **$ 300,000** |
| Loveland Red Dog Pet Resort & Spa LLC | **Equity** | **$ 0** |
| Madison Warehouse, LLC<br>Owns 5027 and 5055 Madison | **Equity** | **$ 0** |

| | | |
|---|---|---|
| Mason RD, LLC | **Equity** | $ 0 |
| Monarch RD LLC | **Equity** | $ 0 |
| Montclair Investors Ltd | **Equity** | $ 15,000 |
| New England Self Storage LLC | **Equity** | $ 0 |
| Northern Kentucky Assisted Living LLC | **Equity** | $ 389,892 |
| Northern Kentucky Retirement Community LLC | **Equity** | $ 0 |
| Northwest Self Storage LLC | **Equity** | $ 0 |
| North Shore RD LLC | **Equity** | $ 0 |
| Pleasant Ridge Realty, LLC | **Equity** | $ 0 |
| R & T Development, INC | **Equity** | $ 0 |
| RD Realty I, LLC | **Equity** | $ 0 |
| Red Corner LLC | **Equity** | $ 950,000 |
| Red Cup Espresso | **Equity** | $ 0 |
| Red Dog Management Company, LLC | **Equity** | $ 0 |
| Red Dog Operations Holding Company LLC<br>Owns 8 LLC's | **Equity** | $ 372 |
| RH Real estate Investments LLC | **Equity** | $ 0 |
| Schnieder-Grasshopper INC | **Equity** | $ 11,834 |
| Seminole Avenue Realty, LLC | **Equity** | $ 0 |
| Shaya B, LLC | **Equity** | $ 0 |
| Skipton Kennel and Pet Center | **Equity** | $ 0 |
| Soft Pouch Equipment LTD | **Equity** | $ 0 |
| Southbrook Health Care Center, Inc. | **Equity** | $ 0 |

| | | |
|---|---|---|
| Steigler Road Realty, LLC | **Equity** | **$ 0** |
| Sterling Glen Health Center LTD | **Equity** | **$ 0** |
| Sterling Manor LTD | **Equity** | **$ 0** |
| Techwoods Circle Rd. | **Equity** | **$ 0** |
| The Cambridge Health Care Center LTD | **Equity** | **$ 0** |
| The Gatherings of Blue Ash | **Equity** | **$ 74,000** |
| The Red Kitchen, LLC | **Equity** | **$ 0** |
| To Life, Ltd | **Equity** | **$ 838,450** |

**Total Equity $ 9,370,087**