# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# CINCINNATI DIVISION

| | |
|---|---|
| In re:<br>RAYMOND JOSEPH SCHNEIDER,<br>                     Debtor. | ) Chapter 11<br>) Case No. 23-10337<br>) Judge Beth A. Buchanan |

## MOTION OF THE HUNTINGTON NATIONAL BANK
## FOR AUTHORIZATION TO CONDUCT RULE 2004 DISCOVERY
## WITH RESPECT TO THE DEBTOR AND THIRD PARTIES

The Huntington National Bank, as Administrative Agent ("**Huntington**"), respectfully submits this Motion for Authorization to Conduct Rule 2004 Discovery with Respect to the Debtor and Third Parties ("**Motion**"). Huntington anticipates the Debtor will consent to discovery of the Debtor. Accordingly, the thrust of this motion likely relates to authorization of discovery directed to third parties.

**I.     INTRODUCTION**

1.     As the Court is aware, the Debtor transferred tens of millions of dollars in assets prior to commencing this bankruptcy proceeding. The propriety of these transfers are among the central issues in this bankruptcy case.

2.     Discovery of the facts related to the transfers are important to determine (a) whether the Debtor acted in good faith in commencing this case; (b) whether any plan of reorganization is proposed in good faith; and (c) whether a trustee should be appointed to pursue recovery of any of

1

the transfers. In addition, discovery will potentially uncover additional assets, transfers or other transactions which have not been voluntarily disclosed by the Debtor.[1]

3. The Debtor cannot be taken at his word. The Debtor represented to the Court in sworn testimony during the hearing on Huntington's motion to appoint a trustee that the transfers occurred as part of the Debtor's estate planning commencing in 2018 before the Debtor became aware of his potential liability to Huntington resulting from a check kiting scheme.

4. The apparent intent of this testimony was to show the Court the transfers were innocent and not made with fraudulent intent.

5. This testimony was misleading. Subsequent to the hearing on the motion to appoint a trustee, the Debtor produced documentation to Huntington showing that Schneider gifted the bulk of his wealth to family trusts **after** Huntington commenced its collection action. The transfers are the following:

| "As of" or Effective Date | Transferor | Transferee | Property |
|---|---|---|---|
| November 1, 2020 | Debtor | Patricia B. Schneider | 6,999 Class B units of Red Dog Operations Holding Company, LLC |
| December 31, 2020 | Patricia B. Schneider | Debtor as trustee of the Patricia B. Schneider 2020 Gift Trust dated December 28, 2020 | 6,999 Class B units of Red Dog Operations Holding Company, LLC |
| December 31, 2020 | Debtor | Eric P. Schneider | 1,000 Class B units of Red Dog Operations Holding Company, LLC |
| November 1, 2020 | Debtor | Patricia B. Schneider | 396 Class B unites of Grasshopper Investments, LLC |
| December 31, 2020 | Patricia B. Schneider | Debtor as trustee of the Patricia B. Schneider | 396 Class B unites of Grasshopper Investments, LLC |

---

1 For example, the Debtor's bankruptcy schedules do not disclose at least four (4) business entities for which government records identify the Debtor as either the agent or registrant.

| "As of" or Effective Date | Transferor | Transferee | Property |
|---|---|---|---|
| | | 2020 Gift Trust dated December 28, 2020 | |
| December 31, 2020 | Patricia B. Schneider | Danielle R. Senzer | 5 Class A units and 45 Class B units of To Life, Ltd. |

6. Because of the Debtor's less than fully candid testimony to the Court, it is important that Huntington be permitted to obtain discovery from third parties, as well as the Debtor. The Debtor's representations need to be verified.

7. As a result, Huntington respectfully requests the Court enter an order authorizing Huntington to engage in discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of the Debtor and third parties related to the acts, conduct, property, liabilities and financial condition of the Debtor and to other matters which may affect the administration of the Debtor's estate, or to the Debtor's right to a discharge.

## II. BACKGROUND[2]

8. The Debtor is a 72-year old entrepreneur. His current ventures include roughly 70 business enterprises or projects in an array of areas, including nursing homes, pet boarding and animal hospitals, storage facilities, apartment complexes, and other real estate ventures.

9. The Debtor started out in the nursing home business. In 1999, while in the process of acquiring a nursing home in Columbus, Ohio, the Debtor first met Harold Sosna. The two developed a partnership and from there developed five nursing home facilities over the next 18 years. The facilities were managed by Mr. Sosna's company, Premier Health Care Management,

---

2 The majority of this background is derived from the Court's order denying Huntington's motion for the appointment of a trustee. [ECF No. 78].

3

Inc. ("**Premier**"). Mr. Sosna also owned other nursing home facilities managed by Keller Group (in which he held a 50% interest)—which amounted to approximately 46% of the total obligation. The Debtor guaranteed the debt owed by these entities to Huntington.

10. According to an affidavit from Mr. Sosna, Huntington developed cash flow concerns regarding the Premier managed entities in October 2019, ultimately declaring the Loans in default and moving the lending relationship to the bank's workout department. It was allegedly at this point in time that Mr. Sosna began a check kiting scheme, which eventually resulted in losses of approximately $59 million. Mr. Sosna was indicted, convicted, and sentenced to prison for his crimes.

11. The Debtor, who describes himself as a silent partner in the Keller Group who was allegedly not involved in the day-to-day operations, testified that he was not aware of the loan defaults with Huntington or the check kiting scheme until May 26, 2020, when he received a notice from Mr. Sosna's attorney that Mr. Sosna had been arrested for kiting.

12. On June 5, 2020, Huntington filed a complaint against Mr. Sosna and his wife, and the Debtor seeking to enforce the guarantees. The state court entered a judgment in the amount of $75,599,410 plus accruing interest from July 28, 2020 against Mr. Schneider on December 13, 2022. The current balance on the judgment is approximately $27 million. Huntington sought the appointment of a receiver over the Debtor's assets on December 19, 2022. The Debtor appealed the judgment and filed a complaint against Huntington and certain of its officers and employees for their alleged negligence in allegedly fostering and enabling Mr. Sosna's manipulation of funds.

13. Following failed settlement negotiations with Huntington, the Debtor filed a chapter 11 bankruptcy petition on March 2, 2023. The petition was a "bare bones petition" filed to halt the garnishment of Mr. Schneider's investment accounts, which he testified would have

resulted in $3.5 to $4.5 million in tax liability if Huntington had been successful in liquidating the accounts.

14. Six days later, Huntington filed an emergency motion in this bankruptcy case to appoint a trustee. Huntington's motion was based, in part, on the Debtor's transfer of tens of millions of dollars into family trusts before the bankruptcy filing as part of the Debtor's plan to avoid the collection efforts of Huntington on a $27 million judgment.

15. Huntington alleged the Debtor engaged in fraudulent transfers and other tactics to remove his assets from the reach of Huntington. Huntington maintained a chapter 11 trustee is essential to ensure the thorough, independent investigation and prosecution of the alleged fraudulent conveyances and to preserve the integrity of the bankruptcy process.

16. The Court held an evidentiary hearing on motion to appoint a trustee on March 15 and 17, 2023. Huntington presented circumstantial evidence tending to show the transfers occurred after the Debtor became aware of Sosna's misconduct and after Huntington commenced its collection action on June 5, 2020.

17. The Debtor disputed the circumstantial evidence and represented to the Court that any asset transfers were in connection with legitimate estate planning, which he began in April 2018 before the issues with Huntington arose. Despite the timing of the transfers being a material issue, the Debtor was unable to provide the Court with the specific dates of the transfers.

18. On April 4, 2023, after the hearings on the motion to appoint a trustee, the Debtor testified at his section 341 meeting. During the section 341 meeting, Debtor's counsel agreed to provide Huntington with documentation concerning the gifts to the family trusts.

19. On April 17, 2023, Debtor's counsel produced some documentation regarding the gifts. A copy of this documentation is attached as Exhibit A.

5

20. Contrary to the Debtor's representations to the Court, this documentation shows, according to the Debtor, that gifting took place in November and December, 2020, after Huntington commenced its collection action. Because the transaction documents are dated or effective "as of" November and December 2020, it is unknown whether the transactions actually occurred on those dates. The documents are not notarized.

### III. STANDARD

21. Bankruptcy Rule 2004 provides for examination of entities to obtain information pertaining to the bankruptcy debtor. The Rule provides, in part:

> (a) Examination on motion. On motion of any party in interest, the court may order the examination of any entity.
>
> (b) Scope of examination. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.
>
> (c) Compelling attendance and production of documents. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.

Fed. R. Bankr. P. 2004.

22. The purpose of Rule 2004 is to provide a tool to parties involved in a bankruptcy to obtain information concerning "the acts, conduct, or property" of the debtor, "the liabilities and

financial condition of the debtor," "any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge," and in a Chapter 11, 12, or 13 case, "the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b) ; See also *In re GYPC, Inc.*, No. 17-31030 (Bankr. S.D. Ohio June 24, 2020).

23. Bankruptcy courts have discretion in determining whether to order a 2004 examination. *Bank One, Columbus NA v. Hammond (In re Hammond )*, 140 B.R. 197 , 201 (S.D. Ohio 1992); *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702 , 708-09 (Bankr. S.D.N.Y. 1991); *In re Fearn*, 96 B.R. 135 (Bankr. S.D. Ohio 1989).

24. The permitted scope of a Rule 2004 examination is broad:

> It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. The scope of examination permitted pursuant to Rule 2004 is wider than that allowed under Federal Rules of Civil Procedure and can legitimately be in the nature of a "fishing expedition". Although the primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets, such examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor.

*Id*. at 137-38 (citations omitted).

25. The scope of Rule 2004 examinations "is not limitless." *Id*. at 138. "The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *Id*. "Moreover, an examination cannot be used for purposes of abuse or harassment." *Id*. at 138.

26. Upon an objection, the party seeking the Rule 2004 examination must establish "good cause," taking into consideration the totality of the circumstances, including the importance of the information to the examiner and the costs and burdens on the creditor. *In re Countrywide Home Loans*, 384 B.R. 373 , 393 (Bankr. W.D. Pa. 2008). The level of good cause required to be established varies depending on the potential intrusiveness. *Id*. (citing *Fearn*, 96 B.R. at 138 ); See also *Official Cmte. Of Unsecured Creditors v. Eagle-Pitcher Indus., Inc. (In re Eagle-Pitcher Indus., Inc.*), 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (citation omitted) (examination should not be so broad as to be more disruptive and costly to the party to be examined than beneficial to the party seeking discovery).

## IV. ARGUMENT

### A. Rule 2004 discovery is appropriate.

27. As the Court anticipated in the opinion[3] denying the motion to appoint a trustee, Huntington needs to further investigate the transfers to the trusts and Rule 2004 discovery is an appropriate tool for that investigation.

28. The 2004 discovery must be fulsome because the Debtor has not been candid with the Court. As indicated previously, the Debtor was not candid in his testimony when he told the Court the transfers to the trusts occurred as part of the Debtor's estate planning commencing in 2018 before the Debtor became aware of his potential liability to Huntington resulting from a check kiting scheme.

---

[3] ECF No. 78, page 22

29.     This testimony was misleading. The documentation[4] produced to Huntington after the hearing shows the bulk of the asset transfers occurred in November and December 2020, after Huntington commenced collection efforts against the Debtor.

30.     The propriety of the transfers, and the trusts themselves, are fundamental issues in this case. The transfers are gifts made without reasonably equivalent value paid to the Debtor. In order to determine if the transfers are avoidable as constructively fraudulent transfers, Huntington needs to discover (a) the Debtor's financial condition at the time of the transfers; (b) valuation information; and (c) financial records of the business entities to enable Huntington to independently determine the value of the transfers.

31.     Huntington needs the following information to determine if the transfers are avoidable based upon fraudulent intent: (a) the trust documents; (b) copies of all documents and instruments executed as part of the alleged estate planning (including electronic copies of the documents containing metadate concerning the date of creation); and (c) copies of all documents provided to any taxing authority concerning the transfers.

32.     In this regard, to the extent the Court grants this motion, Huntington intends to seek discovery of non-privileged information directly from the Debtor's pre-petition professionals to ensure a good faith and fulsome response to the discovery. See, *In re Alexander*, 2021 Bankr Lexis 2818 (Bankr. S.D. Ohio Aug. 31, 2021)(attorney-client privilege "does not envelope everything arising from the existence of an attorney-client relationship" and "attorney-client privilege is narrowly construed to preclude disclosure of confidential communications between attorney and client related to the purpose for which legal advice is sought and not to protect against disclosure

---

4     Exhibit A

of the facts underlying the communication"); *Mancz v. McHenry*, 2021-Ohio-82 (App. 2d Dist. 2021)(discussing scope of attorney/client privilege); *Maddox v. Greene Cnty. Bd. of Comm'rs*, 2014-Ohio-1541, *7 (App. 2d Dist. 2014)(discussing waiver of attorney-client privilege when client asserts an advice of counsel defense).

33. Because the Debtor engaged in transfers after becoming aware of the kiting scheme and Huntington's claim, communications between the Debtor and counsel concerning these transfers may not be privileged. See, *Hayes v. Lindquist*, 22 Ohio App. 58, 63, 5 Ohio Law Abs. 276, 153 N.E. 269 (6th Dist.1926) (finding that testimony about a conversation between a client and his attorney was not protected by the attorney-client privilege where it concerned a discussion of the client fraudulently conveying stock to his sister, as the testimony related to proposed future wrongdoing on the part of the client).

34. It is also possible that the trusts are void or voidable and that the assets in the trusts are property of the Debtor's estate. See example, *Piroch v. Northern Savings & Loan Co.* (In re Piroch), Adversary Proceeding No. 04-1610 (Bankr. N.D. Ohio July 12, 2005)(discussing Ohio public policy which renders certain trusts void). As a result, Huntington needs to conduct discovery concerning the trusts to determine if the trusts are valid under applicable law and to determine if the trusts' property is actually property of the Debtor's bankruptcy estate.

35. The pre-petition transfers to the trusts are not the only problem. The Debtor's bankruptcy schedules do not list at least four (4) business entities in which government records indicate that the Debtor is either the agent or registrant of the entity. The government records are circumstantial evidence that the Debtor has, or had, ownership interests in these entities which have not been appropriately disclosed to the Court or interested parties. Huntington, and all of the

interested parties, need a fulsome disclosure of the Debtor's business interests whether or not the Debtor further amends his bankruptcy schedules to disclose his ownership interests in all entities.

36. Finally, Huntington needs discovery concerning the Debtor's liabilities, including the guaranty obligations. It is likely the Debtor will attempt to confirm a plan of reorganization by seeking the consent of one or more holders of claims against the Debtor. Huntington needs discovery to determine if the claims are valid, whether the claimants are insiders, and to determine the appropriate treatment of the claims in this bankruptcy case.

37. In short, Huntington should be permitted to conduct discovery within the full scope of Rule 2004 including obtaining discovery from third parties and engaging in follow-up discovery as needed.

    **B.    Discovery of these issues is not unduly burdensome.**

38. The discovery Huntington contemplates is not unduly burdensome to the Debtor. According to the Debtor's schedules, the Debtor has $31 million in personal property including more than $25 million in cash deposits or other financial accounts.[5] The Debtor has multi-million dollar vacation homes in Kennebunk, ME and Vail, CO.[6] He has more than sufficient resources to fully respond to the Rule 2004 discovery. Although the Debtor's statement of financial affairs indicate the Debtor is self-employed, the Debtor failed to disclose any income from employment.[7] In any event, it is likely that the Debtor is able to set his own schedule and has the time to respond to the discovery.

---

5    ECF No. 44
6    ECF No. 44. The Debtor values the Vail property at $1.5 million. Realtor.com estimates the value to exceed $2.3 million.
7    ECF No. 44

39. To the extent Huntington propounds discovery which is actually burdensome to the Debtor or any third party, those parties have the right to object to the discovery and have the Court decide the issue at a later point.

## V. CONCLUSION

40. Accordingly, Huntington respectfully requests authorization to conduct discovery of the Debtor and third parties pursuant to Rule 2004.

Dated: June 6, 2023

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Christopher P. Schueller
Christopher P. Schueller (OH Id. No. 0086170)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800
Fax: 412-562-1041
E-mail: christopher.schueller@bipc.com

*Attorneys for The Huntington National Bank*